BENBROOK LAW GROUP, PC
BRADLEY A. BENBROOK (SBN 177786)
STEPHEN M. DUVERNAY (SBN 250957)
400 Capitol Mall, Suite 1610
Sacramento, CA  95814
Telephone: (916) 447-4900
Facsimile:  (916) 447-4904
brad@benbrooklawgroup.com
steve@benbrooklawgroup.com

EUGENE VOLOKH (SBN 194464)
UCLA School of Law
405 Hilgard Ave.
Los Angeles, CA  90095
Telephone: (310) 206-3926
Facsimile: (310) 206-7010
volokh@law.ucla.edu

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FIREARMS POLICY COALITION SECOND AMENDMENT DEFENSE COMMITTEE; FIREARMS POLICY COALAITION; KRIS KOENIG; STEPHEN CHOLLET; MICHAEL SCHWARTZ; and TIM DONNELLY,<br><br>Plaintiffs,<br><br>v.<br><br>KAMALA D. HARRIS, in her official capacity as Attorney General of California,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT FOR DECLARATORY, INJUNCTIVE, OR OTHER RELIEF** |

Plaintiffs Firearms Policy Coalition Second Amendment Defense Committee, Firearms Policy Coalition, Kris Koenig, Stephen Chollet, Michael Schwartz, and Tim Donnelly complain of Defendant and allege:

## INTRODUCTION

1. This is a First Amendment challenge to California Government Code section 9026.5, which prohibits the use of the public video feed from the California State Assembly "for any political or commercial purpose, including . . . any campaign for elective public office or any campaign supporting or opposing a ballot proposition submitted to the electors." *Id.*, subd. (a). Violation of the statute is a misdemeanor. *Id.*, sudb. (b).

2. Plaintiffs intend to produce and distribute videos and political advertisements that include footage from hearings of the California State Assembly. The statute is unconstitutional both on its face and as applied to such videos.

3. "Discussion of public issues" is "integral to the operation of the system of government established by our Constitution. The First Amendment affords the broadest protection to such political expression in order 'to assure [the] unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" *Buckley v. Valeo*, 424 U.S. 1, 14 (1976) (quoting *Roth v. United States*, 354 U.S. 476, 484 (1957)). "[I]nteractive communication concerning political change" is "core political speech" for which the First Amendment's protection is "at its zenith." *Buckley v. Am. Const. Law Found.*, 525 U.S. 182, 186–87 (1999) (quoting *Meyer v. Grant*, 486 U.S. 414, 422, 425 (1988)).

4. Plaintiffs seek to use video from Assembly footage in connection with the discussion of public issues, but are prevented from engaging in such core political speech—on pain of criminal sanctions—by Section 9026.5.

5. Remarkably, Section 9026.5 purports to criminalize political speech that uses material placed in the public domain by being streamed live and stored on the Internet, broadcast live on Cable TV, or rebroadcast on the nightly news. While news organizations can freely rebroadcast video of Assembly proceedings under an exemption in the statute, those hoping to use the same material for political speech are committing a crime. Section 9026.5 criminalizes such

1 speech in a content-based and speaker-based way.  It is therefore unconstitutional unless the State
2 meets its burden under strict scrutiny analysis by showing the law is narrowly tailored to serve a
3 compelling state interest—a test it cannot possibly satisfy.

4       6.     Because Section 9026.5 violates the First Amendment, Plaintiffs seek declaratory
5 and injunctive relief to invalidate the statute and enjoin its enforcement by the California
6 Department of Justice.

## JURISDICTION AND VENUE

      7.     This case raises questions under the First Amendment and 42 U.S.C. § 1983.  This Court has jurisdiction over all claims for relief pursuant to 28 U.S.C. § 1331.

      8.     Venue is proper under 28 U.S.C. § 1391(b).  Assignment to the Sacramento division is proper pursuant to Local Rule 120(d) because a substantial portion of the events giving rise to this action occurred in Sacramento County.

## THE PARTIES

      9.     Plaintiff Firearms Policy Coalition Second Amendment Defense Committee (the "FPC PAC") is a political action committee organized to oppose a proposed statewide ballot initiative (officially titled the "Safety for All Act of 2016" (the "Initiative")) that has been submitted for qualification to appear on the ballot for the November 2016 general election.  The FPC PAC has spent funds and resources to oppose the Initiative, and, as further set forth below, has been prevented by Section 9026.5 from distributing political advertisements opposing the Initiative.

      10.    Plaintiff Firearms Policy Coalition ("FPC") is a 501(c)4 non-profit public benefit organization that serves its members and the public through direct and grassroots advocacy, legal action, education, and other efforts.  The purposes of FPC include defending the United States Constitution and the People's rights, privileges and immunities deeply rooted in the Nation's history and tradition, especially the fundamental right to keep and bear arms.  FPC opposes the Initiative and is lobbying, directly and through grassroots efforts, dozens of active measures in the California Legislature.  FPC spends time and resources informing the public about matters of constitutional interest and civil rights through its FPC News video program.  FPC wants to use

1  Assembly video footage to produce videos relating to urgent legislative issues, as well as the
2  Initiative, in the upcoming election.  Since FPC learned of Section 9026.5, it has refrained from
3  doing so because it fears prosecution for using Assembly video footage for "political purposes."

4       11.     Plaintiff Kris Koenig is an award-winning filmmaker, producer, and director.
5  Koenig has contracted with the FPC PAC and FPC to develop and produce videos and political
6  advertisements.  Koeing wants to use Assembly video footage in these videos and advertisements,
7  but fears that doing so could subject him to liability under either the "commercial purposes" or
8  "political purposes" prohibition of Section 9026.5.

9       12.     Plaintiff Stephen Chollet is an award-winning filmmaker who has contracted with
10 the FPC PAC and FPC to develop and videos and political advertisements.  Chollet wants to use
11 Assembly video footage in these videos and advertisements, but fears that doing so could subject
12 him to liability under either the "commercial purposes" or "political purposes" prohibition of
13 Section 9026.5.

14      13.     Plaintiff Michael Schwartz is the Executive Director of San Diego County Gun
15 Owners PAC.  Schwartz and the PAC would like to use Assembly footage in political
16 advertisements opposing the Initiative.

17      14.     Plaintiff Tim Donnelly is a candidate for Congress in California's eighth
18 congressional district.  Donnelly served as a member of the California State Assembly from
19 December 2010 to December 2014.  Donnelly would like to use Assembly video footage in
20 political advertisements in support of his congressional campaign and in opposition to other
21 political candidates and issues, but has refrained from doing so because of Section 9026.5.

22      15.     Defendant Kamala Harris is the Attorney General of the State of California.  The
23 Attorney General is the chief law enforcement officer of the state, and it is her duty to ensure that
24 California's laws are uniformly and adequately enforced.  Attorney General Harris is sued in her
25 official capacity.  The Attorney General maintains an office in Sacramento.

26 ///
27 ///
28 ///

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
-3-

# GENERAL ALLEGATIONS

16. Beginning in 1991, proceedings of the California State Legislature have been publicly broadcast through public-access television networks throughout the state.[1] Plaintiffs seek to use video footage of Assembly proceedings in connection with the discussion of public issues, but are prevented from engaging in such core political speech—on pain of criminal sanctions—by Section 9026.5.

17. Section 9026.5 provides as follows:

> (a) No television signal generated by the Assembly shall be used for any political or commercial purpose, including, but not limited to, any campaign for elective public office or any campaign supporting or opposing a ballot proposition submitted to the electors.
>
> As used in this section, "commercial purpose" does not include either of the following:
>
>   (1) The use of any television signal generated by the Assembly by an accredited news organization or any nonprofit organization for educational or public affairs programming.
>
>   (2) As authorized by the Assembly, the transmission by a third party to paid subscribers of an unedited video feed of the television signal generated by the Assembly.
>
> (b) Any person or organization who violates this section is guilty of a misdemeanor.

18. Plaintiff FPC PAC opposes the Initiative, which has been submitted for qualification to appear on the ballot for the November 2016 general election.

19. FPC PAC has launched a political campaign against the Initiative, which it fears will drastically and negatively affect the civil rights of law-abiding people, including millions of Californians and visitors travelling to California. In connection with its political campaign, FPC PAC intends to produce and distribute video advertisements opposing the Initiative. FPC PAC will distribute the videos to the public on television and online, including, but not limited to, on

---

[1] For millions of California households, the feed is prominently broadcast through the California Channel, "a public service funded entirely by California's cable television operators as a means to provide Californians direct access to 'gavel-to-gavel' proceedings of the California Legislature." The California Channel, *About*, online at http://www.calchannel.com/about/. Public broadcast of legislative proceedings was spurred in significant part by a research study and proposal by the University of Southern California's Annenberg School of Communications and the Center for Responsive Government. Tracy Westen & Beth Givens, Ctr. for Responsive Gov't, *The California Channel: A New Public Affairs Television Network For the State* (1989).

Facebook, on YouTube, on Instagram, and at http://www.fpcsadc.org (the FPC PAC website developed to oppose the initiative).

20. FPC PAC is in the final stages of producing a video that includes Assembly television footage of past and current bill committee hearings, floor discussion, debates, and votes as well as footage from a May 3, 2016 joint Senate and Assembly Public Safety Committee hearing on the Initiative. FPC PAC intended to publish the video starting in May 2016 and to continue using the video as part of its ongoing campaign through the general election in November.

21. While in the final stage of production, however, FPC PAC became aware of Government Code section 9026.5's prohibition on the use of Assembly video footage for "any political . . . purpose," including "any campaign . . . opposing a ballot proposition." Because the advertisement would violate section 9026.5, the committee has halted final production of the video and delayed its distribution plans until it gets the relief requested herein.

22. In addition to this video, FPC PAC intends to produce and distribute additional political advertisements opposing the Initiative that use footage from various Assembly hearings.

23. Plaintiff FPC is producing an online video news program ("FPC News") that focuses on legal and political developments that affect the civil rights of millions of law-abiding people. FPC wants to use Assembly television footage for FPC News, but has refrained from doing so since it learned of Section 9026.5 because it fears prosecution for using such footage for "political purposes."

24. Plaintiffs Koenig and Chollet have contracted with FPC PAC to develop and produce political advertisements opposing the Initiative. They have also contracted with FPC to develop and produce FPC News. But for Section 9026.5, Koenig and Chollet would include footage from the Assembly video feed in these video productions, but both Plaintiffs fear that doing so could subject them to liability under either the "commercial purposes" or "political purposes" prohibition of Section 9026.5.

25. Plaintiff Michael Schwartz is the Executive Director of San Diego County Gun Owners PAC. Schwartz would like to use Assembly footage in political advertisements opposing

the Initiative, but has refrained from doing so because of Section 9026.5.

26. Tim Donnelly is a candidate for Congress in California's eighth congressional district. Donnelly previously served in the Assembly. Donnelly would like to use Assembly video footage in political advertisements in support of his congressional campaign and in opposition to other political candidates and issues. However, during his 2014 campaign for Governor, when he used video footage of a hearing in which he participated, the Assembly Rules Committee threatened an enforcement proceeding under Section 9026.5. But for Section 9026.5, Donnelly would use Assembly video in his active congressional campaign.

### Section 9026.5 Violates the First Amendment

27. By imposing a content-based restriction on the use of video, Section 9026.5 violates the First Amendment. The government "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015) (citation omitted). "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Id*.

28. Section 9026.5 is a content-based restriction that criminalizes core political speech. The statute expressly limits itself to speech based on its content: video footage of television signals generated by the Assembly, which consists of video recordings of Assembly proceedings. Section 9026.5 does not limit or restrict the use of video footage from other sorts of television signals. It is therefore content-based. *See Reed*, 135 S. Ct. at 2227 (holding that a distinction between political signs and other signs was content-based).

29. Moreover, "defining regulated speech by its function or purpose," the Supreme Court has held, also makes a restriction "content based." *Id.* Section 9026.5 does this by expressly barring only the use of Assembly-generated signals "for any political or commercial purpose," whereas certain other uses of the footage—for instance, use in nonprofits' nonpolitical "educational or public affairs programming"—are not prohibited.

30. In *McCullen v. Coakley*, for example, the Supreme Court held that a law is "content based if it require[s] 'enforcement authorities' to 'examine the content of the message that is

conveyed to determine whether' a violation has occurred." 134 S. Ct. 2518, 2531 (2014); *see also Regan v. Time, Inc.*, 468 U.S. 641, 649 (1984) ("A determination concerning the newsworthiness or educational value of a photograph cannot help but be based on the content of the photograph and the message it delivers."). To determine whether a speaker is "us[ing]" a "television signal generated by the Assembly . . . for any political . . . purpose," or instead for "educational" or "public affairs" purposes, enforcement authorities must examine the content of the speaker's message: They must examine it to decide whether the message uses an Assembly-generated signal, and they must examine it to decide whether the message uses the signal for a political, educational, or public affairs purpose.

31. Section 9026.5 also contains an impermissible speaker-based classification. "Because '[s]peech restrictions based on the identity of the speaker are all too often simply a means to control content,'" the Supreme Court has "insisted that 'laws favoring some speakers over others demand strict scrutiny when the legislature's speaker preference reflects a content preference.'" *Reed*, 135 S. Ct. at 2230. Section 9026.5 distinguishes "accredited news organization[s]" and "nonprofit organizations" from other organizations. The only explanation for this speaker preference consistent with the structure of § 9026.5 is that the Legislature prefers nonpolitical "news" content to other content, such as "campaign[s] for . . . office" or "campaign[s] support or opposing . . . ballot proposition[s]."

32. Because section 9026.5 expressly criminalizes political speech in a content- and speaker-based way, it is "presumptively unconstitutional" and is subject to strict scrutiny. *Reed*, 135 S. Ct. at 2226–27; *see also Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010) ("Laws that burden political speech are subject to strict scrutiny.") (internal quotation marks and citation omitted). This means that it is unconstitutional unless it "furthers a compelling interest and is narrowly tailored to achieve that interest." *Id.* at 2231 (internal quotation marks and citation omitted). And there is no compelling government interest in criminalizing the dissemination of Assembly hearings and debates for political or commercial purposes. The Assembly carries on the legislative business on behalf of the citizens of California and it creates video footage that captures those proceedings. California cannot restrict its citizens from sharing

that footage with fellow citizens in furtherance of their fundamental speech rights.

33. An actual and judicially cognizable controversy exists between Plaintiffs and Defendant regarding whether Section 9026.5 violates the First Amendment. Plaintiffs desire a judicial declaration of their rights and Defendant's duties regarding the constitutionality and enforcement of the statute.

34. For the reasons set forth above, Section 9026.5 imposes a substantial burden on Plaintiffs' First Amendment rights, and the threat of criminal sanctions has chilled and continues to chill protected speech. If Plaintiffs do not obtain the judicial relief presently requested, they will not proceed with their activities as planned. Plaintiffs will be forced to either modify the content of their political speech or face criminal sanctions.

## CLAIM FOR RELIEF

## VIOLATION OF 42 U.S.C. § 1983 (FIRST AMENDMENT)

35. Plaintiffs incorporate here by reference paragraphs 1 through 34, *supra*, as if fully set forth herein.

36. Defendant, acting under color of state law, is charged with enforcing Section 9026.5, which deprives Plaintiffs of rights secured by the First Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

37. Section 9026.5 violates the First Amendment, both on its face and as applied to Plaintiffs.

38. Because section 9026.5 expressly criminalizes political speech in a content- and speaker-based way, it is "presumptively unconstitutional." *Reed*, 135 S. Ct. at 2226.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment as follows:

1. Plaintiffs respectfully request that this Court enter a declaratory judgment stating that California Government Code section 9026.5 violates the First Amendment.

2. Plaintiffs respectfully request that this Court enter a preliminary and permanent injunction enjoining enforcement or application of California Government Code section 9026.5.

3. Plaintiffs respectfully request costs of suit, including reasonable attorneys' fees

under 42 U.S.C. § 1988 and any other applicable law, and all further relief to which Plaintiffs may be justly entitled.

Dated: May 26, 2016                                BENBROOK LAW GROUP, PC


By  /s Bradley A. Benbrook
    BRADLEY A. BENBROOK
    Attorneys for Plaintiffs