BENBROOK LAW GROUP, PC
BRADLEY A. BENBROOK (SBN 177786)
STEPHEN M. DUVERNAY (SBN 250957)
400 Capitol Mall, Suite 1610
Sacramento, CA  95814
Telephone: (916) 447-4900
Facsimile:  (916) 447-4904
brad@benbrooklawgroup.com
steve@benbrooklawgroup.com

EUGENE VOLOKH (SBN 194464)
UCLA School of Law
405 Hilgard Ave.
Los Angeles, CA  90095
Telephone: (310) 206-3926
Facsimile: (310) 206-7010
volokh@law.ucla.edu

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FIREARMS POLICY COALITION SECOND AMENDMENT DEFENSE COMMITTEE; FIREARMS POLICY COALAITION; KRIS KOENIG; STEPHEN CHOLLET; MICHAEL SCHWARTZ; and TIM DONNELLY,<br><br>Plaintiffs,<br><br>v.<br><br>KAMALA D. HARRIS, in her official capacity as Attorney General of California,<br><br>Defendant. | Case No.: 2:16-cv-01144-MCE-AC<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>Hearing Date: TBD<br>Judge: Morrison C. England, Jr. |

## I. INTRODUCTION

This is a facial and as-applied First Amendment challenge to California Government Code section 9026.5, which prohibits the use of the public video feed from the California State Assembly "for any political or commercial purpose, including . . . any campaign for elective public office or any campaign supporting or opposing a ballot proposition submitted to the electors." *Id.*, subd. (a).  Remarkably, Section 9026.5 purports to criminalize political speech that uses material placed in the public domain by being streamed live and stored on the Internet, broadcast live on Cable TV, or rebroadcast on the nightly news.  While news organizations can freely rebroadcast video of Assembly proceedings under an exemption in the statute, those hoping to use the same material for political speech are committing a crime.

Section 9026.5 criminalizes political speech in a content-based and speaker-based way.  It is therefore unconstitutional unless the State meets its burden under strict scrutiny analysis by showing the law is narrowly tailored to serve a compelling state interest—a test it cannot possibly satisfy.  Plaintiffs seek a temporary restraining order to allow them to produce and distribute videos and political advertisements related to the upcoming election that include footage from Assembly committee hearings.

## II. BACKGROUND

### THE SPEECH BAN AND THE PLAINTIFFS RESTRICTED BY IT

Beginning in 1991, proceedings of the California State Legislature have been publicly broadcast through public-access television networks throughout the state.[1]  Plaintiffs intend to produce and distribute videos and political advertisements that include footage from hearings of the California State Assembly that are publicly broadcast and archived on the Internet.[2]  They are

---

[1] For millions of California households, the feed is prominently broadcast through the California Channel, "a public service funded entirely by California's cable television operators as a means to provide Californians direct access to 'gavel-to-gavel' proceedings of the California Legislature."  The California Channel, *About*, online at http://www.calchannel.com/about/.  Public broadcast of legislative proceedings was spurred in significant part by a research study and proposal by the University of Southern California's Annenberg School of Communications and the Center for Responsive Government.  Tracy Westen & Beth Givens, Ctr. for Responsive Gov't, *The California Channel: A New Public Affairs Television Network For the State* (1989).

[2] The California Channel maintains a searchable on-demand archive available online at http://www.calchannel.com/video-on-demand/.

prohibited from doing so, however, by California Government Code section 9026.5, which provides as follows:

> (a) No television signal generated by the Assembly shall be used for any political or commercial purpose, including, but not limited to, any campaign for elective public office or any campaign supporting or opposing a ballot proposition submitted to the electors.
>
> As used in this section, "commercial purpose" does not include either of the following:
>
>   (1) The use of any television signal generated by the Assembly by an accredited news organization or any nonprofit organization for educational or public affairs programming.
>
>   (2) As authorized by the Assembly, the transmission by a third party to paid subscribers of an unedited video feed of the television signal generated by the Assembly.
>
> (b) Any person or organization who violates this section is guilty of a misdemeanor.

Section 9026.5 has chilled Plaintiffs' exercise of core political speech and inhibited the free flow of discussion about public issues. As set forth below, each Plaintiff desires to use Assembly footage in connection with the discussion of public issues and would do so, but for Section 9026.5 and the threat of criminal sanctions.

**Firearms Policy Coalition Second Amendment Defense Committee**

Plaintiff Firearms Policy Coalition Second Amendment Defense Committee (the "FPC PAC") is a political action committee organized to oppose a proposed statewide ballot initiative (officially titled the "Safety for All Act of 2016" (the "Initiative")) that has been submitted for qualification to appear on the ballot for the November 8, 2016 general election. Declaration of Brandon Combs ISO TRO, ¶ 3.

FPC PAC has launched a political campaign against the Initiative, which it fears will drastically undermine the civil rights of California citizens. *Id.*, ¶ 5. In connection with its political campaign, the PAC will distribute the videos to the public on television and online, including, but not limited to, on Facebook, on YouTube, on Instagram, and at http://www.fpcsadc.org (the FPC PAC website developed to oppose the Initiative). *Id.*

FPC PAC is in the final stages of producing a video that includes Assembly television footage of past and current bill committee hearings, floor discussion, debates, and votes as well as

1  footage from a May 3, 2016 joint Senate and Assembly Public Safety Committee hearing on the
2  Initiative.  *Id.*, ¶ 6.  FPC PAC intended to publish the video starting in May 2016 and to continue
3  using the video as part of its ongoing campaign through the general election in November.  *Id.*
4    While in the final stage of production, however, FPC PAC became aware of Section
5  9026.5's prohibition on the use of Assembly video footage for "any political . . . purpose,"
6  including "any campaign . . . opposing a ballot proposition."  *Id.*, ¶ 7.  Because the advertisement
7  would violate Section 9026.5, the committee has halted final production of the video and delayed
8  its distribution plans until it gets the relief requested herein.  *Id.*  In addition to this video, FPC
9  PAC intends to produce and distribute additional political advertisements opposing the Initiative
10 that use footage from Assembly hearings.  *Id.*, ¶¶ 7, 9.

### Firearms Policy Coalition

12   FPC is a 501(c)4 non-profit public benefit organization that serves its members and the
13 public through direct and grassroots advocacy, legal action, education, and other efforts.  Combs
14 Decl., ¶ 4.  The purposes of FPC include defending the United States Constitution and the People's
15 rights, privileges and immunities deeply rooted in the Nation's history and tradition, especially the
16 fundamental right to keep and bear arms.  *Id.*  FPC opposes the Initiative and is lobbying, directly
17 and through grassroots efforts, dozens of active measures in the California Legislature.  *Id.*  FPC
18 spends time and resources informing the public about matters of constitutional interest and civil
19 rights.  *Id.*

20   FPC is producing an online video news program ("FPC News") that focuses on legal and
21 political developments that affect the civil rights of millions of law-abiding people.  *Id.*, ¶ 8.  FPC
22 wants to use Assembly television footage for FPC News, but has refrained from doing so since it
23 learned of Section 9026.5 because it fears prosecution for using such footage for "political
24 purposes."  *Id.*  FPC also wants to use Assembly video footage to produce additional videos
25 relating to issues in the upcoming election and ongoing legislative matters in the future.  *Id.*, ¶ 4.

### Kris Koenig and Stephen Chollet

27   Kris Koenig and Stephen Chollet are Emmy-award winning filmmakers.  Declaration of
28 Kris Koenig ISO TRO, ¶ 2; Declaration of Stephen Chollet ISO TRO, ¶ 2.  Koenig and Chollet

have contracted with FPC PAC to develop and produce political advertisements opposing the Initiative.  Koenig Decl., ¶ 2; Chollet Decl., ¶ 2.  They have also contracted with FPC to develop and produce FPC News.  Koenig Decl., ¶ 2; Chollet Decl., ¶ 2.  Koenig and Chollet would include footage from the Assembly video feed in these video productions, but both Plaintiffs fear that doing so could subject them to liability under either the "commercial purposes" or "political purposes" prohibition of Section 9026.5.  Koenig Decl., ¶ 2; Chollet Decl., ¶ 2.

### Michael Schwartz

Plaintiff Michael Schwartz is the Executive Director of San Diego County Gun Owners PAC.  Declaration of Michael Schwartz ISO TRO, ¶ 1.  Schwartz would like to use Assembly footage in the PAC's political advertisements opposing the Initiative, but has refrained from doing so because of Section 9026.5.  *Id.*, ¶ 2.

### Tim Donnelly

Plaintiff Tim Donnelly is a candidate for Congress in California's eighth congressional district.  Declaration of Tim Donnelly ISO TRO, ¶ 3.  Donnelly served as a member of the California State Assembly from December 2010 to December 2014, and would like to use Assembly video footage in political advertisements in support of his congressional campaign and in opposition to other political candidates and issues.  *Id.*, ¶¶ 2–3.  However, during his 2014 campaign for Governor, when he used video footage of a hearing in which he participated, the Assembly Rules Committee threatened an enforcement proceeding under Section 9026.5.  *Id.*, ¶ 2.  But for Section 9026.5, Donnelly would use Assembly video in his active congressional campaign.  *Id.*, ¶ 3.

### III. NOTICE TO DEFENDANTS

Pursuant to Local Rule 231 and Fed. R. Civ. P. 65, Plaintiffs have given Defendant notice of their intention to seek a temporary restraining order and the nature of the relief they request in this motion.  Declaration of Bradley A. Benbrook ISO TRO, ¶¶ 2–3.  Plaintiffs' counsel will serve this motion and supporting documents on Defendant's counsel by e-mail and personal delivery.  *Id.*, ¶ 4.

///

# IV. ARGUMENT

"In general, the showing required for a temporary restraining order and a preliminary injunction are the same." *Hofer v. Grail Semiconductor, Inc.*, No. 2:15-CV-02207-MCE-EFB, 2015 WL 6502696, at *3 (E.D. Cal. Oct. 27, 2015) (citing *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir.2001) (a court's "analysis is substantially identical for [an] injunction and [a] TRO")). A plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008)). Alternatively, injunctive relief "is appropriate when a plaintiff demonstrates that serious questions going to the merits [are] raised and the balance of hardships tips sharply in the plaintiff's favor." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

"[I]n the First Amendment context, the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction." *Doe v. Harris*, 772 F.3d 563, 570 (9th Cir. 2014).

**A.  Plaintiffs Are Likely To Establish That Section 9026.5 Violates The First Amendment.**

    **1.  Section 9026.5 Is Presumptively Unconstitutional Because It Is A Content-Based Prohibition On Protected Speech.**

"Discussion of public issues" is "integral to the operation of the system of government established by our Constitution. The First Amendment affords the broadest protection to such political expression in order 'to assure [the] unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" *Buckley v. Valeo*, 424 U.S. 1, 14 (1976) (quoting *Roth v. United States*, 354 U.S. 476, 484 (1957)). "[I]nteractive communication concerning political change" is "core political speech" for which the First Amendment's protection is "at its zenith." *Buckley v. Am. Const. Law Found.*, 525 U.S. 182, 186–87 (1999) (quoting *Meyer v. Grant*, 486 U.S. 414, 422, 425 (1988)). Plaintiffs seek to use video footage of Assembly

proceedings in connection with the discussion of public issues, but are prevented from engaging in such core political speech—on pain of criminal sanctions—by California Government Code section 9026.5.

By imposing a content-based restriction on the use of video, Section 9026.5 violates the First Amendment. The government "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015) (citation omitted). "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Id*.

Section 9026.5 is a content-based restriction that criminalizes core political speech. The statute expressly limits itself to speech based on its content: video footage of television signals generated by the Assembly, which consists of video recordings of Assembly proceedings. Section 9026.5 does not limit or restrict the use of video footage from other sorts of television signals. It is therefore content-based. *See Reed*, 135 S. Ct. at 2227 (holding that a distinction between political signs and other signs was content-based).

Moreover, "defining regulated speech by its function or purpose," the Supreme Court has held, also makes a restriction "content based." *Id.* Section 9026.5 does this by expressly barring only the use of Assembly-generated signals "for any political or commercial purpose," whereas certain other uses of the footage—for instance, use in nonprofits' nonpolitical "educational or public affairs programming"—are not prohibited.

In *McCullen v. Coakley*, for example, the Supreme Court held that a law is "content based if it require[s] 'enforcement authorities' to 'examine the content of the message that is conveyed to determine whether' a violation has occurred." 134 S. Ct. 2518, 2531 (2014); *see also Regan v. Time, Inc.*, 468 U.S. 641, 649 (1984) ("A determination concerning the newsworthiness or educational value of a photograph cannot help but be based on the content of the photograph and the message it delivers."). To determine whether a speaker is "us[ing]" a "television signal generated by the Assembly . . . for any political . . . purpose," or instead for "educational" or "public affairs" purposes, enforcement authorities must examine the content of the speaker's

message: They must examine it to decide whether the message uses an Assembly-generated signal, and they must examine it to decide whether the message uses the signal for a political, educational, or public affairs purpose.

Section 9026.5 also contains an impermissible speaker-based classification. "Because '[s]peech restrictions based on the identity of the speaker are all too often simply a means to control content,'" the Supreme Court has "insisted that 'laws favoring some speakers over others demand strict scrutiny when the legislature's speaker preference reflects a content preference.'" *Reed*, 135 S. Ct. at 2230. Section 9026.5 distinguishes "accredited news organization[s]" and "nonprofit organizations" from other organizations. The only explanation for this speaker preference consistent with the structure of Section 9026.5 is that the Legislature prefers nonpolitical "news" content to other content, such as "campaign[s] for . . . office" or "campaign[s] support or opposing . . . ballot proposition[s]."

Any of these reasons, even standing alone, would render Section 9026.5 content-based. Put together, they illustrate the content discrimination even more clearly.

**2.  Section 9026.5 Cannot Withstand Strict Scrutiny.**

Because section 9026.5 expressly criminalizes political speech in a content- and speaker-based way, it is "presumptively unconstitutional" and is subject to strict scrutiny. *Reed*, 135 S. Ct. at 2226–27; *see also Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010) ("Laws that burden political speech are subject to strict scrutiny.") (internal quotation marks and citation omitted). This means that the statute is unconstitutional unless it "furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed*, 135 S. Ct. at 2231 (internal quotation marks and citation omitted).

There is no compelling state interest in criminalizing the dissemination of Assembly hearings and debates for political or commercial purposes. To the contrary, California law recognizes in various ways that the state's interest is served by promoting dissemination of public proceedings. The California Constitution declares that "[t]he proceedings of each house [of the Legislature] and the committees thereof shall be open and public." Cal. Const., art. IV, § 7(c)(1); *see also* Cal. Const., art. I, § 3(b)(1) ("The people have the right of access to information

concerning the conduct of the people's business, and, therefore, the meetings of public bodies and the writings of public officials and agencies shall be open to public scrutiny.").[3] The Legislature itself has acknowledged that "access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state." Cal. Gov. Code § 6250. To that end, the Legislature has declared on multiple occasions that the People's right to know what its government is doing is essential to our system of democratic self-governance:

> The people of this state do not yield their sovereignty to the agencies which serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created.

Cal. Gov. Code § 54950; *id.*, § 11120.[4]

The Assembly carries on the legislative business on behalf of the citizens of California and it creates video footage that captures those proceedings. California cannot restrict its citizens from sharing that footage with fellow citizens in furtherance of their fundamental speech rights.

The video footage is simply a recording of the events taking place in the Legislature. For more than a century, the primary record of those proceedings was produced in written form – a transcript of a floor debate, for example. It is inconceivable in the American constitutional system that a citizen could ever have been prevented from copying and disseminating those transcripts to his or her fellow citizens in connection with a message critical – or supportive – of what was recorded in those proceedings. Yet that is exactly what Section 9026.5 purports to do to the modern equivalent of those transcripts.

Plaintiffs are thus left to guess what "compelling interest" the State may identify in trying to resuscitate Section 9026.5, and in discharging its burden of justifying its speech restriction. *See Doe v. Harris*, 772 F.3d at 570. If the government articulates a government interest in response to

---

[3] The inclusion of the public's right of access within Article I, Section 3 is significant, as it reinforces the fact that access to information is central to the people's "right to instruct their representatives, petition government for redress of grievances, and assemble freely to consult for the common good." Cal. Const., art. I, § 3(a).

[4] These declarations were included in the Ralph M. Brown Act, passed in 1953 (which governs public access to local agencies), and the Bagley-Keene Act, passed in 1967 (which governs public access to proceedings of state agencies).

this motion, Plaintiffs request the opportunity to respond to such argument in a reply brief.

### B. Plaintiffs Will Be Irreparably Harmed In The Absence Of A Temporary Restraining Order.

Plaintiffs are irreparably harmed by the threat of enforcement of Section 9026.5. "Both [the Ninth Circuit] and the Supreme Court have repeatedly held that '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Klein v. City of San Clemente*, 584 F.3d 1196, 1207–08 (9th Cir. 2009) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). "The harm is particularly irreparable where, as here, a plaintiff seeks to engage in political speech, as 'timing is of the essence in politics' and '[a] delay of even a day or two may be intolerable . . . .'" *Id.* at 1208 (citations omitted).

Furthermore, the Ninth Circuit has long recognized that constitutional violations in general, and First Amendment violations in particular, constitute irreparable harm. *See, e.g.*, *Stormans, Inc. v. Stelecky*, 586 F.3d 1109, 1138 (9th Cir. 2009) ("'[C]onstitutional violations cannot be adequately remedied through damages and therefore generally constitute irreparable harm.'") (citation omitted); *Goldie's Bookstore, Inc. v. Super. Ct.*, 739 F.2d 466, 472 (9th Cir. 1984) ("[P]urposeful unconstitutional suppression of speech constitutes irreparable harm for preliminary injunction purposes.").

### C. The Balance Of Equities Tips In Plaintiffs' Favor.

"The fact that a case raises serious First Amendment questions compels a finding that there exists 'the potential for irreparable injury, or that at the very least the balance of hardships tips sharply in [claimants'] favor.'" *Sammartano v. First Judicial Dist. Ct.*, 303 F.3d 959, 973 (9th Cir. 2002) (citation omitted). That is particularly the case here, where Plaintiffs are faced with a choice between modifying political speech or facing criminal sanctions. "[T]he threat of criminal prosecution . . . can inhibit the speaker from making [protected] statements, thereby 'chilling' a kind of speech that lies at the First Amendment's heart." *Sanders Cnty. Republican Cent. Comm. v. Bullock*, 698 F.3d 741, 748 (9th Cir. 2012) (citation omitted).

California, on the other hand, is not harmed by an injunction: the State "can derive no legally cognizable benefit from being permitted to further enforce an unconstitutional limit on

1 political speech." *Id.* at 749.

**D.    A Temporary Restraining Order Is In The Public Interest.**

The Ninth Circuit has "consistently recognized the 'significant public interest' in upholding free speech principles, as the 'ongoing enforcement of the potentially unconstitutional regulations . . . would infringe not only the free expression interests of plaintiffs, but also the interests of other people' subjected to the same restrictions." *Klein*, 584 F.3d at 1208 (quoting *Sammartano*, 303 F.3d at 974).  Conversely, enforcement of an unconstitutional law is against the public interest. *E.g.*, *Scott v. Roberts*, 612 F.3d 1279, 1297 (11th Cir. 2010) ("[T]he public, when the state is a party asserting harm, has no interest in enforcing an unconstitutional law."); *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013) ("[E]nforcement of an unconstitutional law is always contrary to the public interest."); *Am. Civil Liberties Union v. Ashcroft*, 322 F.3d 240, 251 n.11 (3d Cir. 2003) (same).

## V. CONCLUSION

For the reasons set forth above, the Court should issue a temporary restraining order that prevents Defendant from enforcing California Government Code section 9026.5.

Dated:  May 27, 2016                                   BENBROOK LAW GROUP, PC

                                                      By  /s Bradley A. Benbrook
                                                          BRADLEY A. BENBROOK
                                                          Attorneys for Plaintiffs