1  KAMALA D. HARRIS
   Attorney General of California
2  MARC A. LEFORESTIER
   Supervising Deputy Attorney General
3  S. MICHELE INAN, State Bar No. 119205
   PETER H. CHANG, State Bar No. 241467
4  Deputy Attorney General
     455 Golden Gate Avenue, Suite 11000
5    San Francisco, CA  94102-7004
     Telephone:  (415) 703-5939
6    Fax:  (415) 703-1234
     E-mail:  Peter.Chang@doj.ca.gov
7  *Attorneys for Defendant Kamala D. Harris,*
   *in her official capacity as California Attorney*
8  *General*

9                    IN THE UNITED STATES DISTRICT COURT

10                   FOR THE EASTERN DISTRICT OF CALIFORNIA

11

12

13

14  **FIREARMS POLICY COALITION**          2:16-cv-01144-MCE-AC
    **SECOND AMENDMENT DEFENSE**
15  **COMMITTEE; ET AL.,**

16                              Plaintiffs,   **DEFENDANT'S OPPOSITION TO**
                                              **MOTION FOR PRELIMINARY**
17         v.                                 **INJUNCTION**

18  **KAMALA D. HARRIS,** in her official     Date:        June 9, 2016
    capacity as Attorney General of California,   Time:        2:30 p.m.
19                                            Courtroom:   7
                                              Judge:       Hon. Morrison C. England, Jr.
20                              Defendant.    Trial Date:  None
                                              Action Filed: May 26, 2016
21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

Background ........................................................................................................................ 2

    I.    The Challenged Statue ............................................................................................ 2

    II.   Plaintiffs and Their Allegations ............................................................................. 2

    A.   Plaintiffs FPC, Koenig, Chollet, and Donnelly .................................................... 2

    B.   Plaintiff Schwartz .................................................................................................. 3

LEGAL STANDARD ........................................................................................................ 4

ARGUMENT ..................................................................................................................... 4

    I.    Plaintiffs' Allegations Are Insufficient to Establish Either A Likelihood of Succeed on the Merits or Serious Questions Going to the Merits ......................... 4

        A.   Plaintiffs' Claims Against the Attorney General are Barred by the Eleventh Amendment ........................................................................................ 4

        B.   Plaintiffs Lack Standing to Sue in the Absence of Any Threatened Enforcement Activity and Intent to Violate the Law .................................... 5

            1.   Plaintiffs Allege No Credible Threat of Adverse State Action ................................................................................................... 6

            2.   Plaintiffs Schwartz and Donnelly Have Alleged No Specific Intent to Violate the Law .................................................... 8

        C.   Plaintiffs Lack Standing Because They Have No First Amendment Right to Use Content Created by the Assembly ........................................ 8

        D.   Section 9026.5's Restriction on Political Speech Passes Strict Scrutiny: It Is Narrowly Tailored to Further The State's Compelling Interest in Protecting the Integrity of Its Legislative Process .................. 10

        E.   Section 9026.5's Restriction on Commercial Speech Passes Intermediate Scrutiny .................................................................................. 13

    II.   Plaintiffs are Not Likely to Suffer Irreparable Harm in the Absence Of Preliminary Relief ............................................................................................... 15

    III.  The Balance of Equities Does Not Tips in Plaintiffs' Favor and an Injunction Is Against Public Interest .................................................................. 16

CONCLUSION ................................................................................................................ 16

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Alliance for the Wild Rockies v. Cottrell*
    632 F.3d 1127 (9th Cir. 2011) ........................................................................ 4

*Anderson v. Davila*
    125 F.3d 148 (3d Cir. 1997) ......................................................................... 16

*Board of Trustees of State University of New York v. Fox*
    492 U.S. 469 (1989) ............................................................................... 13, 14

*Central Hudson Gas & Electric Corp. v. Public Service Commission*
    447 U.S. 557 (1980) ............................................................................... 13, 14

*Coyote Publ'g Inc. v. Miller*
    598 F.3d 592 (9th Cir. 2010) ........................................................................ 13

*Eller Media Co. v. City of Oakland*
    No. C98–2237 FMS, 1998 WL 549494 (N.D. Cal. Aug. 28, 1998) ...................................... 16

*Elrod v. Burns*
    427 U.S. 347 (1976) ............................................................................... 15, 16

*Harper & Row Publishers, Inc. v. Nation Enterprises*
    471 U.S. 539 (1985) ................................................................................. 10

*Hein v. Freedom From Religion Found, Inc.*
    551 U.S. 587 (2007) .................................................................................. 5

*Long v. Van de Kamp*
    772 F. Supp. 1141 (C.D. Cal. 1991) .................................................................... 5

*Lopez v. Candaele*
    630 F.3d 775 (9th Cir. 2010) .................................................................. 5, 6, 7, 8

*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992) .................................................................................. 5

*Schmier v. United States Court of Appeals*
    279 F.3d 817 (9th Cir. 2001) ......................................................................... 6

*Williams-Yulee v. Florida Bar*
    135 S.Ct. 1656 (2015) ............................................................................... 12

*Winter v. Natural Res. Def. Council, Inc.*
    555 U.S. 7 (2008) ................................................................................. 4, 16

ii

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3

*Ex parte Young*
    209 U.S. 123 (1908).................................................................................. 4, 5

4

5

**STATUTES**

6

Cal. Stats. 1991, Chapter 1215, § 1 ....................................................................... 2,7

7

California Government Code
    § 8314.............................................................................................................. 11

8

    § 9026.5..................................................................................................... *passim*
    § 9026.5(a)........................................................................................................ 2

9

    § 9026.5(a)(1) ................................................................................................. 13

10

**CONSTITUTIONAL PROVISIONS**

11

First Amendment ................................................................................... *passim*

12

Eleventh Amendment ................................................................................1, 4, 5

13

California Constitution,
    Article IV...................................................................................................... 6

14

15

**OTHER AUTHORITIES**

16

C-SPAN, *available at http://www.c-span.org/about/copyrightsAndLicensing/* (as
    of June 2, 2016) .................................................................................. 10

17

18

California Channel: About, available at http://www.calchannel.com/about/ (as of
    June 2, 2016) ................................................................................... 9

19

California Channel: History, *available at http://www.calchannel.com/history/* .......................... 11

20

Secretary of State, Initiative and Referendum Qualification Status, *available at*
    *http://www.sos.ca.gov/elections/ballot-measures/initiative-and-referendum-*

21

    *status/* (as of June 2, 2016)............................................................... 3, 15

22

23

Secretary of State, Suggested Deadlines to Qualify Initiatives, *available at*
    *http://elections.cdn.sos.ca.gov/ballot-measures/pdf/appendix-a.pdf* (as of June

24

    2, 2016) ................................................................................................. 3

25

26

27

28

# INTRODUCTION

Plaintiffs assert here that they will suffer a threat of imminent, irreparable harm to their First Amendment rights if this Court does not enjoin state law and allow them to expropriate the California Assembly's television signal for use in their political campaign against a proposed initiative. As a threshold matter, the proposed initiative has not yet qualified for the November 2016 ballot, meaning that any asserted need for relief is speculative and in any event not imminent. In addition, the complaint's allegations do not support injunctive relief of any kind, and the application for a preliminary injunction should be denied.

Plaintiffs' allegations demonstrate they have no likelihood of success, first, because they fail on procedural grounds. Specifically, their claims are both barred by the Eleventh Amendment and they fail for lack of standing, because there is no imminent prospect that the challenged statute will be enforced against plaintiffs by the Attorney General. As discussed in more detail below, the allegations identify no credible threat of enforcement against them under a twenty-five-year-old statute that has apparently never been enforced by any agency. Plaintiffs also lack standing because their allegations draw on no First Amendment right to expropriate video content created by the Assembly for public benefit for use in their political campaign.

Plaintiffs' allegations also fail on the merits. Section 9026.5 is a narrowly-tailored law that serves a compelling interest in protecting the integrity of Assembly proceedings by ensuring that Assembly members are free to engage in legislation without considering that video footage will be used to support or oppose them in political advertisements. It therefore would survive strict scrutiny if the law is subjected to a First Amendment analysis. And to the extent Plaintiffs allege a restriction on commercial speech, Section 9026.5 passes intermediate scrutiny.

Finally, the allegations do not support a finding of an imminent threat of irreparable harm, and the balance of harms tips sharply in favor of denying a preliminary injunction, which would undermine the integrity of the State's legislative process. Therefore, Plaintiffs' request for a preliminary injunction must be denied.

1

**BACKGROUND**

I.    THE CHALLENGED STATUE

     Plaintiffs assert a facial and as-applied First Amendment challenge to California Government Code section 9026.5.[1]  Section 9026.5 prohibits the use of "television signal generated by the Assembly" for political or commercial purposes.  § 9026.5(a).  The prohibition applies to the use of the Assembly-generated television signal for political campaigns, but does not apply to its use for news, educational, or public affairs programming by news organizations and nonprofit organizations.  *Id.*  Violation of Section 9026.5 constitutes a misdemeanor.  Section 9026.5 was enacted in 1991, a year after television coverage of State Assembly proceedings began in 1990.  Cal. Stats. 1991, c. 1215 (A.B. 1661), § 1.  The allegations in the complaint do not indicate that Section 9026.5 has ever been enforced by the Attorney General or any other law enforcement agency.

II.    PLAINTIFFS AND THEIR ALLEGATIONS

     Plaintiffs are a political action committee and non-profit organization, the Firearms Policy Coalition Second Amendment Defense Committee (FPC), and four individuals, Kris Koenig, Stephen Chollet, Michael Schwartz and Tim Donnelly.

     A.    PLAINTIFFS FPC, KOENIG, CHOLLET, AND DONNELLY

     According to the complaint, the FPC opposes a statewide gun-control ballot initiative that has been submitted for qualification for the November 2016 general election ballot – the "Safety for All Act of 2016" – and is lobbying the Legislature and spending resources to inform the public about the initiative and other matters of public interest through its FPC News video program.  Complaint at ¶¶ 9-10.  The initiative has not yet qualified for the November ballot and is not yet eligible for the ballot.  Secretary of State, Initiative and Referendum Qualification Status, *available at http://www.sos.ca.gov/elections/ballot-measures/initiative-and-referendum-status/* (as of June 2, 2016).  An eligible initiative is one in which the required number of signatures have been submitted to and verified by the county election officials.  *Id.*  For the

---

[1] All statutory references hereafter are to the Government Code, unless otherwise stated.

2

1  November 2016 general election, June 30, 2016, is the last day for the Secretary of State to

2  determine whether a measure qualifies for the ballot.  Secretary of State, Suggested Deadlines to

3  Qualify Initiatives, *available at http://elections.cdn.sos.ca.gov/ballot-measures/pdf/appendix-*

4  *a.pdf* (as of June 2, 2016).

5          The complaint alleges that the FPC wishes to use video footage of certain Assembly

6  proceedings to oppose the initiative, but has refrained from doing so because "it fears prosecution

7  for using Assembly video for 'political purposes.'"   Complaint at ¶¶ 9-10.  The complaint also

8  alleges that FPC has hired plaintiffs filmmakers Koenig and Chollet to develop and produce

9  videos and political advertisements opposing the Initiative, but the filmmakers "fear[] that doing

10  so could subject [them] to liability" under Section 9026.5.  *Id.* at ¶¶ 11-12, 24.  The complaint

11  alleges that the FPC halted production of the videos and any plans it had for distributing them

12  after it learned of Section 9026.5.

13          Plaintiff Donnelly is candidate for Congress in California's eighth congressional district.

14  Complaint at ¶ 14.  Donnelly would like to use Assembly footage in support of his congressional

15  campaign and to oppose other candidates and issues, but fears prosecution under Section 9026.5.

16  Donnelly Declaration (Dkt. No. 6-5), ¶ 3.  The complaint alleges that, in 2014, the Legislature's

17  Assembly Rules Committee "threatened an enforcement proceeding under Section 9026.5" after

18  he used video footage of a hearing in which he participated during his 2014 campaign for

19  Governor.  Complaint at ¶ 26.  This allegation in the complaint, however, is not supported by his

20  declaration, submitted in support of Plaintiffs' Motion for a Temporary Restraining Order.  In his

21  declaration, he states only that the Assembly Rules Committee "sent a letter demanding that my

22  campaign stop using the videos immediately because they violated California Government Code

23  section 9026.5."  Donnelly Declaration (Dkt. No. 6-5), ¶ 2.  The complaint does not allege that

24  Donnelly was prosecuted for this violation of Section 9026.5 or that any law enforcement agency

25  with the authority to enforce the statue has threatened prosecution for a future violation.

26      **B.    PLAINTIFF SCHWARTZ**

27          The remaining plaintiff is Schwarz, Executive Director of the San Diego County Gun

28  Owners Political Action Committee.  Complaint at ¶ 13.  The complaint alleges that Schwartz

3

1   would like to use Assembly footage in political advertisements to oppose the Initiative but he has

2   "refrained from doing so because of Section 9026.5." *Id.* at ¶ 25.  Schwarz does not allege any

3   fear of prosecution under Section 9026.5.

4                                         **LEGAL STANDARD**

5        "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v.*

6   *Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  Plaintiffs requesting a preliminary

7   injunction must establish that (1) they are likely to succeed on the merits; (2) they will likely

8   suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their

9   favor; and (4) an injunction is in the public interest. *Id.* at 22.  Alternatively, Plaintiffs may

10  demonstrate that "serious questions going to the merits were raised and the balance of hardships

11  tips sharply in plaintiffs' favor." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-

12  35 (9th Cir. 2011) (quotation omitted).  Even under this alternative standard, however, Plaintiff

13  must still establish that there is a likelihood of irreparable injury and that the injunction is in the

14  public interest. *Id.* at 1135.

15                                          **ARGUMENT**

16  **I.    PLAINTIFFS' ALLEGATIONS ARE INSUFFICIENT TO ESTABLISH EITHER A**
        **LIKELIHOOD OF SUCCEED ON THE MERITS OR SERIOUS QUESTIONS GOING TO THE**
17      **MERITS**

18       Plaintiffs' allegations are inadequate to support a grant of a preliminary injunction because

19  the action is barred by the State's Eleventh Amendment immunity, Plaintiffs lack standing, and

20  because no viable First Amendment claim has been pled.

21      **A.    PLAINTIFFS' CLAIMS AGAINST THE ATTORNEY GENERAL ARE BARRED BY**
            **THE ELEVENTH AMENDMENT**
22
         Plaintiffs' claims are barred by the State's Eleventh Amendment immunity to suit.
23
    Plaintiffs' allegations do not fall within the *Ex parte Young* exception to Eleventh Amendment
24
    immunity because Plaintiffs have not alleged imminent or even likely prosecution by the Attorney
25
    General for their intent to violate Section 9026.5.
26
         The Eleventh Amendment bars federal court jurisdiction against the state or state officials
27
    except for a suit against a state official seeking prospective relief. *Ex parte Young*, 209 U.S. 123,
28

                                                  4

159-60 (1908).  For *Ex parte Young* to apply, however, there must be an actual threat of enforcement.  *Long v. Van de Kamp*, 961 F.2d 151, 152 (9th Cir. 1992).  Here, Plaintiffs have failed to establish the threat of enforcement.

Plaintiffs have not alleged any imminent or threatened prosecution by the Attorney General (or any other law enforcement agency).  Despite the twenty-five years the statute has been in effect, and despite Donnelly's acknowledged violation of the statute, Plaintiffs have alleged no past enforcement action.  Nor have they alleged any indication that the Attorney General intends to pursue, or encourages local law enforcement agencies to pursue, actions under Section 9026.5 against Plaintiffs or anyone else.

Plaintiffs' failure to allege facts demonstrating any actual threat of enforcement, renders their claims barred by the State's Eleventh Amendment immunity to suit.

### B.   PLAINTIFFS LACK STANDING TO SUE IN THE ABSENCE OF ANY THREATENED ENFORCEMENT ACTIVITY AND INTENT TO VIOLATE THE LAW

Each of the plaintiffs lacks standing to sue in the absence of both credible threat of enforcement and an intent to violate the law.  Article III standing is premised upon the Constitution's limitation of the judicial to "cases" or "controversies."  *Hein v. Freedom From Religion Found, Inc.*, 551 U.S. 587, 597-98 (2007).  The requisite elements of Article III standing are well established: "A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."  *Id.* (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).  The injury, moreover, must constitute "an invasion of a legally protected interest which is (1) concrete and particularized, and (2) actual or imminent, not merely conjectural or hypothetical."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  A plaintiff must prove injury in fact "in the same way as any other matter on which plaintiff bears the burden of proof, *i.e.*, with the matter and degree of evidence required at the successive stages of litigation."  *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010) (quoting *Lujan*, 504 U.S. at 561).  At the preliminary injunction stage, "a plaintiff must make a clear showing of injury in fact."  *Id.* (internal quotation mark omitted).  At the pleading stage, the complaint must allege

5

1    "specific facts" to satisfy all elements of standing for each claim he or she seeks to press.

2    *Schmier v. United States Court of Appeals*, 279 F.3d 817, 821 (9th Cir. 2001).

3           Constitutional challenges based on the First Amendment present unique standing

4    considerations, and a plaintiff may therefore demonstrate an injury in fact without first suffering a

5    direct injury from the challenged restriction.  *Lopez*, 630 F.3d at 785.  "In an effort to avoid the

6    chilling effect of sweeping restrictions, the Supreme Court has endorsed what might be called a

7    'hold your tongue and challenge now' approach rather than requiring litigants to speak first and

8    take their chances with the consequences."  *Id.* (quoting *Ariz. Right to Life PAC v. Bayless*, 320

9    F.3d 1002, 1006 (9th Cir. 2003)).  In a pre-enforcement case such as this one, where a plaintiff

10   has *not* yet been subject to prosecution resulting from allegedly affected speech, the injury in fact

11   can be established by "demonstrate[ing] a realistic danger of sustaining a direct injury as a result

12   of the statute's operation or enforcement."  *Lopez*, 630 U.S. at 785 (quoting *Babbitt v. UFW Nat'l

13   Union*, 442 U.S. 289, 298 (1979)).  According to the Ninth Circuit, a realistic danger of a direct

14   injury is demonstrated by establishing three elements.  First, plaintiffs must show a reasonable

15   likelihood that the government will enforce the challenged law against them.  *Lopez*, 630 F.3d at

16   786.  Second, plaintiffs must establish, with some degree of concrete detail, that they intend to

17   violate the challenged law.  *Id.*  Finally, they must show that the challenged law applies to them.

18   *Id.*  Section 9026.5 by its terms applies to all the plaintiffs, and so the third factor is not an issue

19   in this case.

20          1.     PLAINTIFFS ALLEGE NO CREDIBLE THREAT OF ADVERSE STATE
21                    ACTION

22          The complaint fails to allege a credible threat of adverse state action sufficient to establish

23   standing, the first of the *Lopez* factors set forth above.  The FPC, their filmmakers Koenig and

24   Chollet, and Donnelly each allege that their First Amendment free speech rights are

25   impermissibly chilled because they fear prosecution for using Assembly video for political

26   purposes.  See Complaint at ¶ 9-10, see also ¶¶ 11-12, 23-24, 26.  Plaintiff Schwartz alleges only

27   that he would like to use Assembly footage but have "refrained from doing so because of Section

28

6

1    9026.5." Complaint at ¶ 25. These allegations do not resemble a credible threat of enforcement

2    sufficient to satisfy the *Lopez* standard.

3          Preliminary efforts to enforce a speech restriction or past enforcement of that restriction

4    constitute "strong evidence" that pre-enforcement plaintiffs face a "credible threat of adverse

5    state action." *Lopez*, 630 F.3d at 786. *Lopez* explains that a threat of prosecution might be

6    credible if the government "has indicted or arrested the plaintiffs," if authorities have

7    "communicated a specific warning or threat to initiate proceedings" under the subject speech

8    restriction, or if there is a "history of past prosecution or enforcement under the challenged

9    statute" to plaintiffs or similarly-situated individuals. *Id.* (quoting *Thomas v. Anchorage Equal*

10   *Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000)). In contrast, "general threat[s]" by state

11   officials to enforce "those laws which they are charged to administer" do not suffice. *Id.* at 787

12   (quoting *United Pub. Workers of Am. v. Mitchell*, 330 U.S. 75, 88 (1947) (alteration in original).

13   Similarly, "mere allegations of a subjective 'chill' are not an adequate substitute for a claim of

14   specific present objective harm or a threat of specific future harm." *Id.* (quoting *Liard v. Tatum*,

15   408 U.S. 1, 13-14 (1972)).

16         All Plaintiffs, except Schwartz, allege only general, subjective fears of prosecution under

17   Section 9026.5, and do not allege any specific threats of enforcement of Section 9026.5 against

18   them as defined in *Lopez*. Schwartz alleges no fear of prosecution at all. Plaintiffs also do not

19   allege that the Attorney General has ever indicted or arrested anyone for violating Section 9026.5,

20   do not allege that she has communicated a specific warning or threat to initiate proceedings under

21   the challenged statute, and do not allege any history of past prosecution or enforcement by any

22   other law enforcement authority since Section 9026.5 was enacted 25 years ago. *See* Cal. Stats.

23   1991, ch. 1215, § 1. Plaintiffs' allegation that they have a subjective, generalized fear of

24   prosecution is insufficient to confer standing under *Lopez*.

25         The complaint's conclusory allegation that the Assembly Rules Committee threatened

26   enforcement action against Donnelly several years ago is also insufficient to establish standing for

27   Donnelly or any of the other plaintiffs under the *Lopez* test. The Donnelly allegation fails to

28   establish what the Assembly Rules Committee letter stated in sufficient terms to determine

                                              7

1   whether it did constitute a threat of enforcement.  And even if the letter threatened enforcement, it

2   would be a meaningless threat because the Assembly Rules Committee lacks misdemeanor

3   enforcement authority.  *See* Cal. Const., art. IV.  In any event, the Assembly Rules Committee is

4   not named as a defendant in this action, only the Attorney General is.

5           Nevertheless, Donnelly's declaration softens the complaint's allegation that the Assembly

6   Rules Committee threatened enforcement action against him for use of Assembly video.  It states

7   only that he received a letter from the Assembly Rules Committee demanding that he stop using

8   Assembly video footage because it violated Section 9026.5.  Donnelly Declaration (Dkt. No. 6-5)

9   at ¶ 2.  The complaint's allegations, coupled with the declaration, are insufficient to establish a

10  credible threat of enforcement action against any of the plaintiffs to this action.

11           **2.    PLAINTIFFS SCHWARTZ AND DONNELLY HAVE ALLEGED NO SPECIFIC**
                **INTENT TO VIOLATE THE LAW**

12

13          To establish standing, a plaintiff's allegations require "something more than a hypothetical

14  intent to violate the law . . . ."  *Lopez*, 630 F.3d at 787 (internal citations and quotations omitted,

     alterations in original).  Indeed, Plaintiffs "must articulate[] a concrete plan to violate the law in

15  question."  *Id.* (internal citations and quotation marks omitted.).  While the FPC and their

16  filmmakers arguably have alleged something more that a hypothetical intent to violate the law,

17  plaintiffs Schwartz and Donnelly do not allege any facts or provide any evidence establishing an

18  intent with concrete detail to violate the law.  These plaintiffs allege only that they would like to

19  use Assembly footage but do not allege having taken any concrete steps to use the footage for any

20  political campaigns.  Schwartz Declaration (Dkt. No. 6-7), ¶ 2; Donnelly Declaration (Dkt. No. 6-

21  5), ¶ 3.  With insufficient allegations and no concrete, detailed plan that they intend to violate the

22  statute, these plaintiffs cannot establish Article III standing to bring their First Amendment

23  claims.

24

25       **C.    PLAINTIFFS LACK STANDING BECAUSE THEY HAVE NO FIRST AMENDMENT**
              **RIGHT TO USE CONTENT CREATED BY THE ASSEMBLY**

26          The essential question presented in this case is whether the Legislature may enact a law that

27  protects video footage of Assembly proceedings from being used for political campaign and

28  commercial purposes.  This question does not concern First Amendment rights because Section

                                                    8

1    9026.5 does not restrict Plaintiffs' freedom of expression, but limits only the degree to which

2    content created by the Assembly, partially at taxpayer expense, may be expropriated for private

3    gain.

4         The Assembly has no constitutional obligation to allow a television signal of its

5    proceedings to be produced.  But it has authorized the television signal in order to provide public

6    access to its proceedings as a benefit to the public at large.  This authorization, however, is

7    limited to this public purpose for the obvious reason that the floor debates and committee

8    discussions that occur in the Assembly are for the purpose of conducting the People's business—

9    not to provide content for politicians, profiteers, and propagandists.  While cable television

10   companies cover the costs of the technology associated with the Assembly television signal,[2] the

11   setting, the operations of the Assembly, and salaries and per diems of the Assembly Members

12   whose words and images are the substance of the Assembly television signal are all paid for by

13   the taxpayers of the State.  The State has a vital interest in ensuring that the proceedings of the

14   Assembly are sharply focused on the consideration of legislation directed to important policy

15   issues of the day.  To achieve this end, Assembly Members must engage in free and open debate

16   on these important issues without the prospect of video of their work being used either for their

17   own political or commercial benefit, or for the political or commercial benefit of their opponents.

18   Section 9026.5 achieves these purposes by authorizing Assembly video footage to be used as a

19   public service by providing Californians direct access to "gavel-to-gavel" proceedings of the

20   California Legislature "where public policy is discussed, debated, and decided—all without

21   editing, commentary, or analysis . . . ."  The California Channel: About, *available at*

22   http://www.calchannel.com/about/ (as of June 2, 2016).

23        In contrast, Plaintiffs fail to allege any protected interest under the First Amendment.  First,

24   the First Amendment does not guarantee a right to expropriate video footage of Assembly

25   proceedings created and paid for by third party entities, the California Channel and the State, for

26   Plaintiffs' private political campaign and commercial gain.  Plaintiffs' use of these videos could

27        [2] The California Channel: About, *available at* http://www.calchannel.com/about/ (as of
28   June 2, 2016).

9

1   implicate copyright infringement concerns,[3] would be contrary to the purpose and intent for

2   which these videos were created and paid for, and would affirmatively chill speech by members

3   of the Assembly in the course of their work for the People.

4        Plaintiffs have also failed to allege any protected interest under the First Amendment to use

5   the video footage of Assembly proceedings for their own political and commercial purposes.

6   Section 9026.5 does not restrict Plaintiffs' own expressive activity.  They are free to create their

7   own video content, to use audio of Assembly proceedings, and to comment on Assembly

8   proceedings in any way.  Just as there is no First Amendment right to use the copyrighted work of

9   another, *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 556 (1985), there is

10  no First Amendment right to use content generated and paid for entirely by another for a purpose

11  contrary to the intent of the content's creation, and barred by state law.  The Legislature may

12  appropriately restrict the use of such content without running afoul of the First Amendment.

13      **D.   SECTION 9026.5'S RESTRICTION ON POLITICAL SPEECH PASSES STRICT
            SCRUTINY: IT IS NARROWLY TAILORED TO FURTHER THE STATE'S
14          COMPELLING INTEREST IN PROTECTING THE INTEGRITY OF ITS LEGISLATIVE
            PROCESS**

15       In the event the Court views Plaintiffs' allegations as raising a First Amendment interest, it

16  should nevertheless deny the motion for preliminary injunction because Plaintiffs are not able to

17  establish a likelihood of success on the merits.

18       Section 9026.5 is a viewpoint-neutral law that is narrowly tailored to serve a compelling

19  state interest in protecting the integrity of the State's legislative processes.  It promotes free and

20  open debate among Assembly Members in committee meetings and on the Assembly floor.  The

21  prohibition against the use of televised Assembly footage for political campaigns helps to ensure

22  that the Assembly Members are focused on the pressing issues of the day without consideration of

23  how televised footage of the member could be used either for or against him in a political

24  campaign.

25  _____

26   [3] C-SPAN, which broadcasts federal government events, expressly prohibits unlicensed
    commercial use of any of its video programming, and generally permits use of its videos for non-
27  commercial purposes.  C-SPAN, *available at http://www.c-
    span.org/about/copyrightsAndLicensing/* (as of June 2, 2016).  The California Channel does not
28  appear to have any express policy permitting unlicensed use for any purpose.

1      The Assembly is not required to televise its proceedings and had only begun to do so in

2    1990.[4]  Televising the Assembly proceedings is a public service that permits the public to access

3    and view the Assembly's deliberative and decision-making process in enacting legislation.  While

4    Assembly proceedings have always been public, the Assembly's use of the television medium

5    allows Californians everywhere in the state to have a meaningful form of access to the

6    proceedings in Sacramento.  Televising the Assembly proceedings, however, carries with it the

7    danger of Assembly members and others using the footage in unintended ways that would

8    undermine the free and open debate that is vital to the success of the legislative process.

9      The State has a compelling interest in protecting the integrity of its legislative process, and

10    ensuring that its legislative process is not compromised by the unintended uses of televised

11    Assembly proceedings.  If the Legislature permitted televised footage of Assembly proceedings to

12    be used for political campaign purposes, or if this Court were to command it, the public benefit of

13    Assembly video would be severely undermined.  It would inhibit free and robust debate focused

14    on the passage of laws.  It may affect the behavior of Assembly Members if video footage of their

15    speeches and debates on the Assembly floor could be used in political advertisements either

16    supporting or opposing the members.

17      For example, if Assembly Members are permitted to use footage of themselves for their

18    own campaign purposes, this would encourage conduct designed to support the member's own

19    campaign advertising, weakening the legislator's focus on the work at hand—legislating.  In

20    essence, the use of the Assembly floor in this manner would permit indirectly what the law bars

21    directly—the use of public resources for campaign activity.  *See* Cal. Gov't Code § 8314.  Thus,

22    Section 9026.5's prohibition on using Assembly footage for campaign purposes is a critical

23    element of maintaining the integrity of the State's political process.

24      By the same token, Section 9026.5 cannot accomplish its intended purpose if the restriction

25    is limited only to the Assembly Members themselves.  A necessary corollary of the bar against

26        [4] Test broadcast of Assembly proceedings, available to 1.5 million California homes,

27    began in August 1990.  Official coverage began in February 1991.  Broadcast of Senate
proceedings did not begin until 1992.  *See* California Channel: History, *available at*
*http://www.calchannel.com/history/* (as of June 2, 2016).

28

1  *members'* use of Assembly video for political purposes, is that their supporters and opponents

2  must also be barred from such use.  If an Assembly Member's supporters were free to use

3  Assembly footage in creating promotional campaign material in support of the Assembly Member,

4  the intent for Section 9026.5 would be defeated.  And if only Assembly Members and their

5  supporters are prohibited from using Assembly footage, their political opponents would otherwise

6  be free to use edited footage against members in political campaigns.  Such an imbalance would

7  surely undermine free speech in Assembly proceedings, and move what should be public

8  discussions behind closed doors, out of the public eye.  Section 9026.5 addresses these concerns

9  appropriately by prohibiting the use of Assembly-generated footage for political purposes by

10  anyone.

11      These compelling State interests are not only intuitive, *see also Williams-Yulee v. Florida*

12  *Bar*, 135 S.Ct. 1656, 1666 (2015) (the interests advanced by the ethics canon at issue are

13  "intuitive"), but also confirmed by a 1989 hearing conducted by the Assembly Committee on

14  Utilities and Commerce to consider whether to televise Assembly proceedings.[5]  At the hearing,

15  titled "Televising the Legislature: Serving Democracy in an Electronic Age," the committee

16  examined the prospects of televising California legislative proceedings.  Request for Judicial

17  Notice, Exh. A (Committee Hearing Transcript) at iv.  During the 1989 hearing, several

18  Assembly members expressed concerns that televising the Assembly proceedings would

19  negatively impact the proceedings.  Assembly Members were concerned that legislators would

20  use televised proceedings for grandstanding, and might even formulate or modify legislation "in

21  order to create a specific TV image." *Id.* at 19, 28-29.  An Assembly Member could grandstand

22  and use the Assembly floor to create campaign advertisement for himself or herself.  But the

23  Assembly could not prohibit only the use of such video by its members, without creating an

24  unbalanced situation under which the political opponent of an Assembly Member could use a

25  video clip of an Assembly Member, taken out of context, against him.  The director of C-SPAN

26  testified at the 1989 hearing that this was a problem seen by C-SPAN.  *Id.* at 46-47.

27  _____

[5] Given the Court's expedited schedule for this motion, Defendant has not yet been able to retrieve the relevant legislative history, or determine whether any exists.

28

12

Section 9026.5 is also narrowly tailored in that it expressly excludes from its scope uses of the Assembly televised footage for non-political purposes, including for educational and public affairs purposes. The use of Assembly televised footage for those purposes, even in a commercial context, are expressly permitted. Cal. Govt Code § 9026.5(a)(1). Section 9026.5 is also narrowly tailored to address only televised footage, and does not prohibit the use of audio recordings or transcripts of Assembly proceedings. The actual content of the Assembly speeches and debates, therefore, are free for anyone to use for any lawful purpose.

### E.   SECTION 9026.5'S RESTRICTION ON COMMERCIAL SPEECH PASSES INTERMEDIATE SCRUTINY

Plaintiffs cannot establish a likelihood of success on the merits with respect to their claim against Section 9026.5's restriction against the use of Assembly television signal for commercial purposes.[6] Plaintiffs' claim, to the extent one is made, is based on their allegation that filmmakers Koenig and Chollet were hired by the FPC to create videos that use Assembly-generated television signal and that they fear liability under Section 9026.5, presumably because their use of Assembly-generated television signal would be for commercial purposes. Complaint at ¶¶ 11-12.

Commercial speech enjoys a limited measure of protection commensurate with its subordinate position in the scale of First Amendment values. *Board of Trustees of State University of New York v. Fox*, 492 U.S. 469, 477 (1989). Regulation of commercial speech is reviewed according to the four-prong, intermediate-scrutiny test announced in *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557, 563-66 (1980); *Coyote Publ'g Inc. v. Miller*, 598 F.3d 592, 598-610 (9th Cir. 2010). The first prong asks whether the commercial speech at issue concerns a lawful activity and is not misleading. *Central Hudson*,

---

[6] Plaintiffs have not sufficiently pled a challenge to Section 9026.5's restriction against use of Assembly-generated television signal for commercial purposes. The complaint and plaintiffs' motion focus almost entirely on political speech and present no argument that Section 9026.5's restriction relating to commercial purposes is unconstitutional. Yet plaintiffs allege that Koenig and Chollet fear liability "under either the 'commercial purposes' or 'political purposes' prohibition of Section 9026.5." Complaint at 11-12. Furthermore, Plaintiffs present a facial challenge to Section 9026.5, and seek an injunction against the enforcement of Section 9026.5 in its entirety. In an abundance of caution, Defendant addresses Section 9026.5's prohibition against use of Assembly footage for commercial purposes.

13

1    447 U.S. at 566.  First Amendment's concern for commercial speech is based on the

2    informational function of advertising.  *Id.*, 447 U.S. at 563 (citation omitted).  Therefore, there is

3    no constitutional objection to the suppression of commercial messages that do not accurately

4    inform the public about lawful activity.  *Id.* The government may ban forms of communication

5    more likely to deceive the public than to inform it.  *Id.* (citation omitted).  If the first prong is met,

6    then the second prong asks whether the government asserts a substantial interest; the third prong

7    asks whether the government's regulation directly advances the asserted interest; and the fourth

8    prong asks whether the regulation is no more restrictive than necessary to serve that interest.  *See*

9    *id.*  Specifically with regard to the fourth prong, the Supreme Court requires only that the "fit"

10   between the legislature's ends and the means chosen to accomplish those end to be reasonable.

11   *Fox*, 492 U.S. at 480 (internal citation and punctuation marks omitted).  The fit need not be "the

12   single best disposition but one whose scope is 'in proportion to the interest served; that employs

13   not necessarily the least restrictive means but . . . a means narrowly tailored to achieve the desired

14   objective."  *Id.* (internal citation and punctuation marks omitted).  Within those bounds, the courts

15   "leave it to governmental decisionmakers to judge what manner of regulation may best be

16   employed."  *Id.*

17        The Court's analysis here should stop at the first prong of the *Central Hudson* test.  Neither

18   the Complaint nor the Motion alleges any facts for the Court to determine whether the

19   contemplated commercial speech is misleading.  The videos that FPC contracted filmmakers

20   Koenig and Chollet to make have not been created, and have not, or perhaps could not have, been

21   made available in this case.  *See* Complaint at ¶¶ 21 ("the committee has halted final production

22   of the video"), 24 ("But for Section 9026.5, Koenig and Chollet *would include* footage from the

23   Assembly video feed in these video productions. . . .") (emphasis added).  Therefore, Plaintiffs

24   cannot establish that they are likely to succeed on the merits with respect to Section 9026.5's

25   application to commercial speech.

26        Assuming for the sake of discussion that the contemplated commercial speech is lawful and

27   not misleading, the remaining prongs of the *Central Hudson* test are satisfied by Section 9026.5.

28   As established above in Section D, the State has compelling (and therefore substantial) interests

14

in protecting the integrity of its legislative process, Section 9026.5 advances those interests and is no broader than necessary to serve the interest.

## II.   PLAINTIFFS ARE NOT LIKELY TO SUFFER IRREPARABLE HARM IN THE ABSENCE OF PRELIMINARY RELIEF

Plaintiffs have not established that they will suffer irreparable harm in the absence of preliminary injunctive relief for two reasons.  First, plaintiffs FPC, Koenig, Chollet, and Schwartz each intends to prepare political advertisements opposing the ballot initiative "Safety for All Act of 2016."  Complaint at ¶¶ 9-13.  The initiative, however, has not yet qualified for the November ballot and is as yet not eligible for the ballot.  Secretary of State, Initiative and Referendum Qualification Status, *available at http://www.sos.ca.gov/elections/ballot-measures/initiative-and-referendum-status/* (as of June 2, 2016).  The initiative is currently pending signature verification. *Id.*  Therefore, at this time, whether the initiative would be on the November 2016 general election ballot is entirely speculative.  Plaintiffs therefore cannot establish that they are likely to suffer irreparable harm if they are restricted from using prohibited content in producing videos opposing the initiative, when the initiative is not yet eligible for the ballot.

Second, even assuming that plaintiffs have made a technical legal showing of likelihood of harm, that harm carries minimal weight because Section 9026.5 restrains very little speech. Section 9026.5 is narrowly tailored to restrict only the use of "television signal generated by the Assembly."  It does not restrict the use of audio recordings or transcripts of the Assembly proceedings.  Therefore, Plaintiffs could still use audio feeds or transcriptions of Assembly proceedings, together with any image or video they wish to use, short of the actual television feed. Plaintiffs therefore would suffer no real harm, much less irreparable harm, if they were required to comply with Section 9026.5.

Plaintiffs, relying on *Elrod v. Burns,* 427 U.S. 347, 373 (1976), argue only that any loss of First Amendment freedom constitutes irreparable injury.  Motion for Temporarily Retraining Order (Dkt. No. 6) at 9.  Contrary to plaintiffs' argument, however, there is nothing in *Elrod* to suggest that the Supreme Court "intended to do away with the traditional prerequisites for injunctive relief simply because First Amendment freedoms were implicated."  *Anderson v.*

15

1   *Davila*, 125 F.3d 148, 164 (3d Cir. 1997).  To the contrary, the Supreme Court in *Elrod*

2   concluded that injunctive relief was warranted because "plaintiffs' First Amendment injuries were

3   'both threatened and occurring at the time of respondents' motion.'"  *Id.* (quoting *Elrod*, 427 U.S.

4   at 374); *see also Eller Media Co. v. City of Oakland*, No. C98–2237 FMS, 1998 WL 549494, at

5   *7 (N.D. Cal. Aug. 28, 1998) ("Plaintiffs are not entitled to a finding of 'irreparable injury' by

6   virtue of pleading a constitutional claim.").

7        Plaintiffs therefore are not likely to suffer irreparable harm in the absence of an injunction.

8   **III.   THE BALANCE OF EQUITIES DOES NOT TIPS IN PLAINTIFFS' FAVOR AND AN INJUNCTION IS AGAINST PUBLIC INTEREST**

9        In exercising sound discretion, a district court "must balance the competing claims of injury

10  and consider the effect of granting or withholding the requested relief," paying "particular regard

11  for the public consequences in employing the extraordinary remedy of injunction."  *Winter*, 555

12  U.S. at 24 (quotation marks and citation omitted).  An injunction prohibiting the enforcement of

13  Government Code section 9026.5 would be against the public interest because it would either

14  compromise the State's compelling interest in protecting the integrity of its legislative process, or

15  restrict access to the Assembly by prompting the Assembly to end production of the television

16  signal.  If Plaintiffs are permitted to use Assembly video footage to create political advertisements,

17  it could have an immediate chilling effect on the conduct of Assembly members.

18       Balancing this compelling public interest against Plaintiffs' claimed harm in not being able

19  to use televised footage of Assembly proceedings in political advertisements, while being able to

20  use audio recordings and transcripts, to oppose an initiative that is not presently eligible for the

21  ballot and has not qualified for the ballot, it is clear that the equities tip away from Plaintiffs and

22  in Defendant's favor.

23                              **CONCLUSION**

24       For all the reasons provided above, the Court should deny Plaintiffs' Motion for

25  Preliminary Injunction.

26

27

28

16

1    Dated:  June 3, 2016                          Respectfully Submitted,

2                                                   KAMALA D. HARRIS
                                                    Attorney General of California
3                                                   MARC A. LEFORESTIER
                                                    Supervising Deputy Attorney General
4                                                   S. MICHELE INAN
                                                    Deputy Attorney General
5
                                                    /s/ Peter H. Chang
6
                                                    PETER H. CHANG
7                                                   Deputy Attorney General
                                                    *Attorneys for Defendant Kamala D.*
8                                                   *Harris, in her official capacity as*
                                                    *California Attorney General*
9        SA2016101044
10       20861361.docx

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28