UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIREARMS POLICY COALITION SECOND AMENDMENT DEFENSE COMMITTEE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>KAMALA D. HARRIS,<br><br>Defendant. | No. 2:16-cv-1144-MCE-AC<br><br>**MEMORANDUM AND ORDER** |

Plaintiffs Firearms Policy Coalition Second Amendment Defense Committee ("FPC Committee"), Firearms Policy Coalition ("FPC"), Kris Koenig, Steven Chollet, Michael Schwartz, and Tim Donnelly (collectively "Plaintiffs") would like to use video footage from California Assembly hearings generated by the Assembly's television signal in political advertisements. They have refrained from doing so, however, because California Government Code section 9026.5 makes the use of such video for political purposes a misdemeanor.[1] Plaintiffs thus filed this lawsuit seeking a declaration that section 9026.5 violates the First Amendment of the United States Constitution and an injunction preventing the Attorney General from enforcing section 9026.5 against them.

---

[1] All further references to "section 9026.5" and "the statute" are to California Government Code § 9026.5 unless otherwise indicated.

1

On June 9, 2016, the Court orally granted Plaintiffs' Motion for a Preliminary Injunction ("Motion") and indicated that a written order would follow.  See ECF Nos. 6, 8, 14.  This written order supersedes the Court's oral ruling.

## BACKGROUND[2]

Since 1991, proceedings of the California Legislature have been publicly broadcast throughout the state.  Although members of the public are able to use the California Senate's video feed for any purpose, Government Code section 9026.5 prohibits the use of the Assembly's video feed "for any political or commercial purpose, including . . . any campaign for elective public office or any campaign supporting or opposing a ballot proposition submitted to the electors."  Cal. Gov't Code § 9026.5(a).  Violation of the statute is a misdemeanor.

Plaintiffs are a diverse group of individuals and organizations that intend to use Assembly video footage to create political advertisements.  Specifically, Plaintiff FPC Committee is a political action committee organized to oppose a proposed statewide ballot initiative (officially titled the "Safety for All Act of 2016" and hereafter referred to as the "Initiative") submitted for qualification to appear on the ballot in November 2016.  Plaintiff "FPC is a 501(c)(4) non-profit organization whose purpose involves "defending . . . the fundamental right to keep and bear arms."  ECF No. 1 at ¶ 10.  Plaintiffs Kris Koenig ("Koenig") and Stephen Chollet ("Chollet") are filmmakers who have contracted with the FPC Committee and FPC to develop and produce videos and political advertisements.  Plaintiff Michael Schwartz ("Schwartz") is the Executive Director of San Diego County Gun Owners PAC.  Finally, Tim Donnelly ("Donnelly") is a candidate for Congress in California's eighth congressional district.  Donnelly would like to use Assembly video footage in political advertisements in support of his congressional

---

[2] The following recitation of background facts is taken from Plaintiffs' Complaint and their declaration in support of the instant Motion.

campaign and in opposition to other political candidates and issues. Schwartz, FPC, and the FPC Committee wish to use Assembly video footage in advertisements opposing the Initiative. All Plaintiffs aver that they would use Assembly video footage in creating their advertisements, but fear prosecution under section 9026.5 if they do so. Accordingly, they have either refrained from producing advertisements that include Assembly video footage, or have refrained from releasing advertisements they have already created.

## STANDARD

"A preliminary injunction is an extraordinary and drastic remedy." Munaf v. Geren, 553 U.S. 674, 690 (2008). "[T]he purpose of a preliminary injunction is to preserve the status quo between the parties pending a resolution of a case on the merits." McCormack v. Hiedeman, 694 F.3d 1004, 1019 (9th Cir. 2012). A plaintiff seeking a preliminary injunction must establish that he is: (1) "likely to succeed on the merits;" (2) "likely to suffer irreparable harm in the absence of preliminary relief;" (3) "the balance of equities tips in his favor;" and (4) "an injunction is in the public interest." Winter v. Natural Res. Defense Council, 555 U.S. 7, 20 (2008). "If a plaintiff fails to meet its burden on any of the four requirements for injunctive relief, its request must be denied." Sierra Forest Legacy v. Rey, 691 F. Supp. 2d 1204, 1207 (E.D. Cal. 2010) (citing Winter, 555 U.S. at 22). "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" Winter, 555 U.S. at 24 (quoting Amoco Prod. Co. v. Gambell, 480 U.S. 531, 542 (1987)). A district court should enter a preliminary injunction only "upon a clear showing that the plaintiff is entitled to such relief." Winter, 555 U.S. at 22 (citing Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)). Alternatively, under the so-called sliding scale approach, as long as the plaintiff demonstrates the requisite likelihood of irreparable harm and shows that an injunction is in the public interest, a preliminary injunction can

3

still issue so long as serious questions going to the merits are raised and the balance of hardships tips sharply in the plaintiffs' favor.  Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (concluding that the "serious questions" version of the sliding scale test for preliminary injunctions remains viable after Winter).

## ANALYSIS

### A. Plaintiffs have Standing to Challenge Section 9026.5.

Before proceeding to the merits of the instant Motion, the Court must first examine Plaintiffs' standing to bring this action.  Article III of the Constitution limits federal courts' jurisdiction to "cases" and "controversies."  Hein v. Freedom From Religion Found., Inc., 551 U.S. 587, 597-98 (2007).  A plaintiff can establish a case or controversy if he alleges "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."  Id. at 598 (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)).

Courts apply a relaxed standing requirement in First Amendment cases.  See e.g., Italian Colors Restaurant v. Harris, 99 F. Supp. 3d 1199, 1206 (E.D. Cal. 2015) ("When the threatened enforcement effort implicates First Amendment rights, the inquiry tilts dramatically toward a finding of standing.") (quoting LSO, Ltd. v. Stroh, 205 F.3d 1146, 1155 (9th Cir. 2000)).  The right of free expression secured by the First Amendment is so important that courts find the requisite level of injury necessary to confer standing where a plaintiff alleges that he or she engaged in self-censorship as a result of a speech-restricting statute.  Az. Right to Life Pol. Action Comm. v. Bayless, 320 F.3d 1002, 1006-07 (9th Cir. 2003).

Here, both the Complaint and the declarations in support of the instant Motion specifically allege that Plaintiffs Donnelly, Schwartz, FPC and FPC Committee have engaged in self-censorship as a result of section 9026.5.  See ECF No. 1 at ¶¶ 19-26; ECF No. 6-6 at ¶¶ 7-8; ECF No. 6-7 at ¶ 3; ECF No. 6-5 at ¶ 3.  Furthermore, while

Plaintiffs Chollet and Koenig have not specifically stated that they have refrained from producing advertisements that include Assembly video footage, they have alleged that they are under contract with FPC and FPC Committee to produce such advertisements. ECF No. 6-3 at ¶ 2; ECF No. 6-4 at ¶ 2. The only logical inference is that Chollet and Koenig have suffered actual injury because section 9026.5 has prevented them from creating the films they were hired to produce. Given the "transcendent value to society" of the right of free expression, Az. Right to Life, 320 F.3d at 1006, this inference is sufficient to establish that Chollet and Koenig have also engaged in self-censorship as a result of section 9026.5.

      Defendant argues, however, that Plaintiffs self-censorship cannot constitute an actual injury for purposes of the First Amendment standing inquiry because members of the public have no right to "expropriate video footage of Assembly proceedings created and paid for . . . by the State[.]" ECF No. 10 at 13:23-26. According to Defendant, Plaintiffs' proposed use of such video footage implicates copyright infringement concerns, contravenes the purpose of the Assembly television signal, and would chill the speech of Assembly members in the course of their work for the people.

      This argument fundamentally misunderstands the well-established First Amendment right to use public records to inform the public about the administration of its government. In Cox Broad. Corp. v. Cohn, the Supreme Court considered whether a broadcaster could be civilly liable for the publication of accurate information contained in public records. 420 U.S. 469 (1975). In concluding that the publication of such information was protected by the First Amendment, the Court noted that "[p]ublic records by their very nature are of interest to those concerned with the administration of government" and that the public benefits from the publication of the true contents of public records. Cox, 420 U.S. at 495. Accordingly, the Court held that the First Amendment forbids states from imposing civil sanctions "on the publication of truthful information contained in official court records open to public inspection." Id. Although states are free to make political calculations about the kind of information they release to

the public, once that information is disclosed in "public documents open to public inspection, the press cannot be sanctioned for publishing it." Id. at 496.

The Supreme Court's holding in Cox cannot be limited to members of the press. See Citizens United v. Fed. Election Comm'n, 558 U.S. 310, 352 (2010) (explaining that the Supreme Court has "consistently rejected the proposition that the institutional press has any constitutional privilege beyond that of other speakers. With the advent of the Internet and the decline of print and broadcast media . . . the line between the media and others who wish to comment on political and social issues becomes far more blurred."). Nor can Cox's holding be limited to Court records.  If what transpires in the courtroom is public property, then what transpires before the Legislature is, too.  See Cox, 420 U.S. at 492-93 ("There is no special perquisite of the judiciary which enables it, as distinguished from other institutions of democratic government, to suppress, edit, or censor events which transpire in proceedings before it." (citation omitted)).

Plaintiffs here seek to publish accurate excerpts of Assembly proceedings that the California Legislature made publicly available through the Assembly's television signal. Defendant's assertion that Plaintiffs have no right to use the publicly available video footage of those proceedings is contrary to the clear pronouncement of the Supreme Court in Cox and antithetical to the nature of our democracy.  Plaintiffs therefore have standing to challenge section 9026.5.[3]

**B.  Plaintiffs are Entitled to a Preliminary Injunction.**

As explained more fully below, Plaintiffs have established that they are likely to prevail on the merits of their challenge to section 9026.5, that they will be irreparably harmed if a preliminary injunction does not issue, that the balance of equities tips in their favor, and that an injunction is in the public interest.  The Court therefore enjoins Defendant from enforcing section 9026.5 against Plaintiffs.

---

[3] The Court declines to address the argument that Plaintiffs' use of Assembly video footage implicates copyright infringement concerns because Defendant has not established that it has obtained copyright protection for such footage.  The Court notes, however, that even if Defendant had made a showing of copyright protection, the fair use doctrine would almost certainly protect Plaintiffs' ability to use excerpts from the Assembly video footage.

**1. Section 9026.5 Violates the First Amendment.**

The freedom to express political opinions is the heart of the First Amendment. Buckley v. Valeo, 424 U.S. 1, 14 (1976). A statute that targets speech based on its content is presumptively invalid, and will only be upheld if the government shows that it survives strict scrutiny, i.e., that the statute is necessary and "narrowly tailored to serve compelling state interests." Reed v. Town of Gilbert, 135 S. Ct. 2218, 2226 (2015). Because section 9026.5 criminalizes the use of Assembly video footage for political purposes, it is a content-based law that must survive strict scrutiny.[4] At this point, the arguments that Defendant has advanced in opposition to the instant Motion shows that it cannot.

At the outset, Defendant's argument that the compelling interest of protecting the integrity of the legislative process justifies section 9026.5 is nothing more than a mirage. At a 1989 hearing on the proposed televising of Assembly proceedings, there was some worry that the presence of cameras would lead to grandstanding on the Assembly floor. ECF No. 11-1 at 9-10, 13. Defendant identifies the need to prevent grandstanding as synonymous with the protection of the integrity of legislative proceedings. ECF No. 10 at 16:11-26. That argument fails for a very basic reason: the fact that an Assembly member plays to the camera during legislative proceedings does not mean that those proceedings or their results lack integrity. One person's "grandstanding" is another's "passionate debate." In other words, "grandstanding" is simply "speech" by another name. The State's interest in preventing such speech is far from compelling.

///

---

[4] Defendant argues that because Plaintiffs Chollet and Koenig will profit economically from producing advertisements with Assembly video footage, section 9026.5 is entitled to greater deference with respect to their challenge. ECF No. 10 at 17-19. Defendant's argument lacks merit. "Some of our most valued forms of fully protected speech are uttered for a profit." Board of Trustees of State Univ. of N.Y. v. Fox, 492 U.S. 469, 481 (1989) (citing, as examples, cases involving political ads for which money is paid). "[W]hat defines commercial speech" is that the speech "proposes a commercial transaction," Fox, 492 U.S. at 481, not that some of the people who engage in the speech are motivated by profit. That someone—such as Koenig or Chollet—"has an economic motivation" for speech "would clearly be insufficient by itself to turn the materials into commercial speech." Bolger v. Youngs Drug Products Corp., 463 U.S. 60, 67 (1983).

Furthermore, even if preventing grandstanding protects the integrity of legislative proceedings and thus constitutes a compelling state interest, section 9026.5 is far from necessary–or narrowly tailored–to achieve that goal. First, it is telling that, although the California Senate also televises its proceedings, neither section 9026.5 nor any other statute prevents members of the public from using its footage for political or commercial purposes. Second, the fact that no one can use Assembly video footage for a political purpose does not prevent Assembly members from playing to the cameras. After all, section 9026.5 permits "any accredited news organization" to use Assembly video footage. Assembly members can surely grandstand to attract press coverage even if section 9026.5 is enforced. Their ability to do so would undermine the integrity of legislative proceedings just as easily as if they played to the cameras in order to create footage for third-party political advertisements.

Finally, the California Legislature can prevent grandstanding through less intrusive means. The Assembly is free to police its members' conduct on the Assembly floor through its own rules. Indeed, it already does so. See e.g., Standing Rules of the Assembly, 2015-16 Regular Session, at Rule 108.[5] Defendant's counterargument–that preventing grandstanding solely through rules constraining Assembly members would lead to an unbalanced situation in which Assembly members would be prohibited from using video footage of their conduct while leaving their political opponents free to attack them with that footage–misses the point.[6] This sort of "balancing" is not a legitimate governmental objective. "[T]he concept that government may restrict the speech of some elements of our society in order to enhance the relative voice of others is wholly foreign to the First Amendment." Buckley v. Valeo, 424 U.S. 1, 48–49 (1976).

///

---

[5] Available at http://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=201520160HR1&search_keywords.

[6] Indeed, Defendant's balancing argument acknowledges the actual, entirely uncompelling purpose behind section 9026.5: "ensuring that Assembly members are free to engage in legislation without considering that video footage will be used to support or oppose them in political advertisements." ECF No. 10 at 5:18-20 (emphasis added).

In sum, Defendant has failed to carry her burden of proving that section 9026.5 can survive strict scrutiny. Her failure to do so shows that Plaintiffs are likely to prevail on the merits of their challenge.

### 2. Plaintiffs have also Shown the Requisite Irreparable Harm.

Plaintiffs have demonstrated that they will continue to suffer irreparable harm in the absence of a preliminary injunction. The denial of First Amendment freedoms generally constitutes irreparable harm, and that harm is exacerbated where a plaintiff seeks to engage in political speech. Klein v. City of San Clemente, 584 F.3d 1196, 1207–08 (9th Cir. 2009). That is precisely what Plaintiffs allege here. Defendant nonetheless advances two arguments that she claims negate the clear harm that Plaintiffs have already experienced and will experience further if section 9026.5 is enforced against them.

First, Defendant suggests that Plaintiffs cannot suffer irreparable harm from the statute's enforcement because the Initiative has not yet qualified for the ballot. Defendant's argument is perplexing. As the Ninth Circuit has repeatedly stated, "timing is of the essence in politics and a delay of even a day or two may be intolerable . . . ." Id. at 1208 (internal quotation marks omitted). Plaintiffs have decided that their political interests are best served by opposing the Initiative before it qualifies for the ballot. Defendant cannot seriously expect that this Court will allow her to criminally prosecute Plaintiffs simply because she disagrees with their sense of timing.

Second, Defendant argues that Plaintiffs will not suffer any real harm if they are required to comply with section 9026.5 because they are still free to use transcripts and audio recordings of the Assembly proceedings in question. Transcripts and audio recordings, however, are imperfect substitutes for video images. See Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio, 471 U.S. 626, 647 (1985) ("The use of illustrations or pictures in advertisements serves important communicative functions: it attracts the attention of the audience to the advertiser's message, and it may also serve to impart information directly."). Furthermore, the Ninth Circuit has repeatedly found

irreparable harm to plaintiffs even where a speech restriction left them free to speak in other ways.  E.g., Klein, 584 F.3d at 1207–08 (9th Cir. 2009) (restriction on placing leaflets on unoccupied cars irreparably harmed speakers, even though speakers remained free to speak using other media); Valle Del Sol Inc. v. Whiting, 709 F.3d 808, 827–28 (9th Cir. 2013) (although plaintiffs remained free to speak using other media, restriction on solicitation of employment on public streets irreparably harmed them).

Neither of Defendant's arguments change the fact that Plaintiffs have suffered, and will continue to suffer, irreparable harm as result of section 9026.5.  Accordingly, the irreparable harm factor favors Plaintiffs here.

### 3. The Balance of Hardships and the Public Interest Favor the Issuance of an Injunction.

In order for the Court to enjoin the enforcement of section 9026.5, Plaintiffs must demonstrate that an injunction is in the public interest and that the harm to Defendant if an injunction issues is outweighed by the harm to Plaintiff if it does not.  Winter, 555 U.S. at 20.  These inquiries are closely related, and the Court analyzes them together.  See Sierra Forest Legacy v. Rey, 691 F. Supp. 2d 1204, 1210-1214 (E.D. Cal. March 1, 2010).

The public interest favors the issuance of an injunction here.  The Court has determined that Plaintiffs are highly likely to prevail on the merits of their First Amendment challenge to section 9026.5.  The public has no interest in enforcing unconstitutional laws.  Silvester v. Harris, No. 1:11-cv-2137, 2014 WL 6611592 at *4 (E.D. Cal. Nov. 20, 2014) (collecting cases).  Moreover, the State's decision to make information publicly available necessarily means that further dissemination of that information advances the public's interest in good government.  See Cox, 420 U.S. at 495.  That is precisely what Plaintiffs propose to do if they receive preliminary injunctive relief from section 9026.5.

Defendant argues that a parade of horribles will befall the public if she is enjoined from enforcing section 9026.5 against Plaintiffs.  Specifically, Defendant suggests that:

(1) the Assembly will cut off television access to its proceedings; (2) the integrity of the Assembly's legislative process will be compromised; and (3) the apparently robust debate that the statute purportedly protects will be frozen by Assembly members' fear of opposition.  ECF No. 10 at 20:12-18.  As to Defendant's second argument, the Court reiterates that there is no discernible link between legislative integrity and Plaintiffs' proposed use of the Assembly's video feed.  Furthermore, Defendant has provided no evidence to support her first and third arguments.

The foregoing analysis of the public interest demonstrates that the State will suffer comparatively little harm if the Court enjoins the enforcement of section 9026.5.  Conversely, Plaintiffs will become criminals if they release their advertisements without the protection of a preliminary injunction.  The balance of hardships thus tips firmly in Plaintiffs' favor, and they have satisfied all four factors necessary to obtain a preliminary injunction.  Accordingly, Plaintiffs' Motion is GRANTED.

## CONCLUSION

Plaintiffs' Motion for a Preliminary Injunction (ECF No. 6, see also ECF No. 10) is GRANTED.  Defendant is hereby ENJOINED from enforcing California Government Code section 9026.5 pending a final adjudication of this matter on the merits.

IT IS SO ORDERED.

Dated:  June 20, 2016

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE