BENBROOK LAW GROUP, PC
BRADLEY A. BENBROOK (SBN 177786)
STEPHEN M. DUVERNAY (SBN 250957)
400 Capitol Mall, Suite 1610
Sacramento, CA  95814
Telephone: (916) 447-4900
Facsimile:  (916) 447-4904
brad@benbrooklawgroup.com
steve@benbrooklawgroup.com

EUGENE VOLOKH (SBN 194464)
UCLA School of Law
405 Hilgard Ave.
Los Angeles, CA  90095
Telephone: (310) 206-3926
Facsimile: (310) 206-7010
volokh@law.ucla.edu

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIREARMS POLICY COALITION SECOND AMENDMENT DEFENSE COMMITTEE; FIREARMS POLICY COALITION; KRIS KOENIG; STEPHEN CHOLLET; MICHAEL SCHWARTZ; and TIM DONNELLY, <br><br> Plaintiffs, <br><br> v. <br><br> KAMALA D. HARRIS, in her official capacity as Attorney General of California, <br><br> Defendant. | Case No.: 2:16-cv-01144-MCE-AC <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR <u>SUMMARY JUDGMENT</u>** <br><br> Hearing Date: September 22, 2016 <br> Time: 2:00 p.m. <br> Courtroom: 7 <br> Judge: Morrison C. England, Jr. <br><br> Action filed May 26, 2016 |

# I. INTRODUCTION

This is a facial and as-applied First Amendment challenge to California Government Code section 9026.5, which prohibits the use of the public video feed from the California State Assembly "for any political or commercial purpose, including . . . any campaign for elective public office or any campaign supporting or opposing a ballot proposition submitted to the electors." *Id.*, subd. (a). Section 9026.5 purports to criminalize political speech that uses material placed in the public domain by being streamed live and stored on the Internet, broadcast live on Cable TV, or rebroadcast on the nightly news. While news organizations can freely rebroadcast video of Assembly proceedings under an exemption in the statute, those hoping to use the same material for political speech are committing a crime.

On June 22, this Court granted Plaintiffs' motion for preliminary injunction, holding that Plaintiffs were "highly likely" to succeed on their claim that Section 9026.5 violates the First Amendment. ECF No. 15, Memorandum and Order Granting Plaintiffs' Motion for Preliminary Injunction ("Injunction Order") at 10:19. The Court should now reaffirm its conclusions and enter summary judgment in Plaintiffs' favor.

# II. FACTUAL BACKGROUND

## THE SPEECH BAN AND THE PLAINTIFFS RESTRICTED BY IT

Beginning in 1991, proceedings of the California State Legislature have been publicly broadcast through public-access television networks throughout the state.[1] Plaintiffs brought this case because they wanted to produce and distribute videos and political advertisements that include footage from hearings of the California State Assembly that are publicly broadcast and archived on the Internet.[2]

---

[1] For millions of California households, the feed is prominently broadcast through the California Channel, "a public service funded entirely by California's cable television operators as a means to provide Californians direct access to 'gavel-to-gavel' proceedings of the California Legislature." The California Channel, *About*, online at http://www.calchannel.com/about/. Public broadcast of legislative proceedings was spurred in significant part by a research study and proposal by the University of Southern California's Annenberg School of Communications and the Center for Responsive Government. Tracy Westen & Beth Givens, Ctr. for Responsive Gov't, *The California Channel: A New Public Affairs Television Network For the State* (1989).

[2] The California Channel maintains a searchable on-demand archive available online at http://www.calchannel.com/video-on-demand/.

Until this Court issued the Injunction Order, however, California Government Code section 9026.5 prohibited plaintiffs from using that video footage as part of their political speech.  Section 9026.5 provides as follows:

> (a) No television signal generated by the Assembly shall be used for any political or commercial purpose, including, but not limited to, any campaign for elective public office or any campaign supporting or opposing a ballot proposition submitted to the electors.
>
> As used in this section, "commercial purpose" does not include either of the following:
>
> (1) The use of any television signal generated by the Assembly by an accredited news organization or any nonprofit organization for educational or public affairs programming.
>
> (2) As authorized by the Assembly, the transmission by a third party to paid subscribers of an unedited video feed of the television signal generated by the Assembly.
>
> (b) Any person or organization who violates this section is guilty of a misdemeanor.

As set forth below, each Plaintiff desires to use Assembly footage in connection with the discussion of public issues and would do so, but for Section 9026.5 and the threat of criminal sanctions.

**Firearms Policy Coalition Second Amendment Defense Committee**

Plaintiff Firearms Policy Coalition Second Amendment Defense Committee (the "FPC PAC") is a political action committee organized to oppose a proposed statewide ballot initiative (officially titled "Proposition 63" (the "Initiative")) that has qualified to appear on the ballot for the November 8, 2016 general election.[3]  ECF No. 6-6, Declaration of Brandon Combs ISO TRO, ¶ 3.

FPC PAC has launched a political campaign against the Initiative, which it fears will drastically undermine the civil rights of California citizens.  *Id.*, ¶ 5.  In connection with its political campaign, the PAC proposed to distribute the videos to the public on television and online, including, but not limited to, on Facebook, on YouTube, on Instagram, and at

---

[3]     Since filing this lawsuit, FPC PAC has changed its name to "Stop Prop 63, a grassroots, common-sense effort for rational policy sponsored by Firearms Policy Coalition."  Declaration of Brandon Combs ISO Summary Judgment, ¶ 4 n.1.

http://www.fpcsadc.org (the FPC PAC website developed to oppose the Initiative).  *Id.*

Prior to bringing this case, FPC PAC was in the final stages of producing a video that includes Assembly television footage of past and current bill committee hearings, floor discussion, debates, and votes as well as footage from a May 3, 2016 joint Senate and Assembly Public Safety Committee hearing on the Initiative.  *Id.*, ¶ 6.  While in the final stage of production, however, FPC PAC became aware of Section 9026.5's prohibition on the use of Assembly video footage for "any political . . . purpose," including "any campaign . . . opposing a ballot proposition."  *Id.*, ¶ 7. Because the advertisement would violate Section 9026.5, the committee halted final production of the video and delayed its distribution plans.  *Id.*

Since the Injunction Order was issued, FPC PAC produced and distributed videos and political advertisements opposing the Initiative that used footage from the Assembly video feed, and FPC PAC intends to produce and distribute additional videos leading up to the election. Declaration of Brandon Combs ISO Summary Judgment, ¶ 4.

## Firearms Policy Coalition

FPC is a 501(c)4 non-profit public benefit organization that serves its members and the public through direct and grassroots advocacy, legal action, education, and other efforts.  ECF No. 6-6, Combs Decl. ISO TRO, ¶ 4.  The purposes of FPC include defending the United States Constitution and the People's rights, privileges and immunities deeply rooted in the Nation's history and tradition, especially the fundamental right to keep and bear arms.  *Id.*  FPC opposes the Initiative and is lobbying, directly and through grassroots efforts, dozens of active measures in the California Legislature.  *Id.*  FPC spends time and resources informing the public about matters of constitutional interest and civil rights.  *Id.*

FPC is producing an online video news program ("FPC News") that focuses on legal and political developments that affect the civil rights of millions of law-abiding people.  *Id.*, ¶ 8.  FPC wants to use Assembly television footage for FPC News, but refrained from doing so since it learned of Section 9026.5 because it fears prosecution for using such footage for "political purposes."  *Id.*  In addition, FPC wants to use Assembly video footage to produce additional videos relating to issues in the upcoming election and ongoing legislative matters in the future.

*Id.*, ¶ 4.  Since the Injunction Order was issued, FPC has produced and distributed videos opposing the Initiative and recent, separate legislation that use footage from the Assembly video feed. Declaration of Brandon Combs ISO Summary Judgment, ¶ 5.

### Kris Koenig and Stephen Chollet

Kris Koenig and Stephen Chollet are Emmy-award winning filmmakers.  ECF No. 6-3, Declaration of Kris Koenig ISO TRO, ¶ 2; ECF No. 6-4, Declaration of Stephen Chollet ISO TRO, ¶ 2.  Koenig and Chollet have contracted with FPC PAC to develop and produce political advertisements opposing the Initiative.  Koenig Decl., ¶ 2; Chollet Decl., ¶ 2.  They have also contracted with FPC to develop and produce FPC News.  Koenig Decl., ¶ 2; Chollet Decl., ¶ 2. Koenig and Chollet refrained from using footage from the Assembly video feed in these video productions because they feared that doing so could subject them to liability under either the "commercial purposes" or "political purposes" prohibition of Section 9026.5.  Koenig Decl., ¶ 2; Chollet Decl., ¶ 2.  Since the Injunction Order was issued, Koenig and Chollet have participated in the development and production of videos and political advertisements published and distributed by the FPC PAC and FPC that use footage from the Assembly video feed.  Declaration of Brandon Combs ISO Summary Judgment, ¶¶ 4–6.

### Michael Schwartz

Plaintiff Michael Schwartz is the Executive Director of San Diego County Gun Owners PAC.  ECF No. 6-7, Declaration of Michael Schwartz ISO TRO, ¶ 1.  Schwartz would like to use Assembly footage in the PAC's political advertisements opposing the Initiative, but has refrained from doing so because of Section 9026.5.  *Id.*, ¶ 2.

### III. PROCEDURAL BACKGROUND

Plaintiffs filed suit on May 26, 2016, alleging a single claim for relief for violation of 42 U.S.C. section 1983, on the grounds that Section 9026.5 violates the First Amendment.  ECF No. 1.  The next day, Plaintiffs filed a motion for temporary restraining order, ECF No. 6, which the Court treated as a motion for a preliminary injunction, ECF No. 8.

On June 9, 2016, the Court orally granted Plaintiffs' motion for a preliminary injunction after a hearing on the matter, ECF No. 14.  The Court issued a written ruling on June 22.  ECF No.

15, Injunction Order.  The Court held that Plaintiffs were "highly likely to prevail on the merits of their First Amendment claim" and enjoined Defendant from enforcing Section 9026.5 pending a final adjudication of this case.  *Id.*, slip op. at 10, 11.

## IV. ARGUMENT

Summary judgment shall be granted if the evidence "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal citation and quotation omitted).  A fact is material if it could affect the outcome of the suit under the governing substantive law; "irrelevant" or "unnecessary" factual disputes will not be counted.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the moving party would bear the burden of proof on an issue at trial, that party must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  In contrast, if the non-moving party bears the burden of proof on an issue, the moving party can prevail by "merely pointing out that there is an absence of evidence to support the non-moving party's case."  *Id.*

A.      **Section 9026.5 Violates The First Amendment.**

As this Court recognized when granting Plaintiffs' motion for preliminary injunction, Section 9026.5 is a content-based restriction of protected speech that violates the First Amendment.  ECF No. 15, Injunction Order, slip op. at 7–9.  The Court should reaffirm its conclusions and enter summary judgment in Plaintiffs' favor.

  1.     **Section 9026.5 Is Presumptively Unconstitutional Because It Is A Content-Based Prohibition On Protected Speech.**

"Discussion of public issues" is "integral to the operation of the system of government established by our Constitution.  The First Amendment affords the broadest protection to such political expression in order 'to assure [the] unfettered interchange of ideas for the bringing about

of political and social changes desired by the people.'" *Buckley v. Valeo*, 424 U.S. 1, 14 (1976)

(quoting *Roth v. United States*, 354 U.S. 476, 484 (1957)).  "[I]nteractive communication

concerning political change" is "core political speech" for which the First Amendment's protection

is "at its zenith." *Buckley v. Am. Const. Law Found.*, 525 U.S. 182, 186–87 (1999) (quoting *Meyer*

*v. Grant*, 486 U.S. 414, 422, 425 (1988)).  Plaintiffs seek to use video footage of Assembly

proceedings in connection with the discussion of public issues, but are prevented from engaging in

such core political speech—on pain of criminal sanctions—by California Government Code

section 9026.5.

By imposing a content-based restriction on the use of video, Section 9026.5 violates the

First Amendment.  The government "has no power to restrict expression because of its message,

its ideas, its subject matter, or its content." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015)

(citation omitted).  "Content-based laws—those that target speech based on its communicative

content—are presumptively unconstitutional and may be justified only if the government proves

that they are narrowly tailored to serve compelling state interests." *Id.*; *see also United States v.*

*Swisher*, 811 F.3d 299, 313 (9th Cir. 2016) (en banc) (observing that, in *Reed*, the "Supreme Court

has recently provided authoritative direction for differentiating between content-neutral and

content-based enactments").

Section 9026.5 is a content-based restriction that criminalizes core political speech.  The

statute expressly limits itself to speech based on its content: video footage of television signals

generated by the Assembly, which consists of video recordings of Assembly proceedings.  Section

9026.5 does not limit or restrict the use of video footage from other sorts of television signals.  It is

therefore content-based.  *See Reed*, 135 S. Ct. at 2227 (holding that a distinction between political

signs and other signs was content-based).

This Court was therefore correct in concluding that "[b]ecause section 9026.5 criminalizes

the use of Assembly video footage for political purposes, it is a content-based law that must

survive strict scrutiny."  ECF No. 15, Injunction Order at 7:7–8.  Accordingly, the statute is

"presumptively invalid, and will only be upheld if the government shows . . . that the statute is

necessary and 'narrowly tailored to serve compelling state interests.'" *Id.* at 7:4–6 (quoting *Reed*,

1   135 S. Ct. at 2226).

2        **2.      Section 9026.5 Cannot Withstand Strict Scrutiny.**

3        There is no compelling state interest in criminalizing the dissemination of Assembly

4   hearings and debates for political or commercial purposes.  To the contrary, California law

5   recognizes in various ways that the state's interest is served by promoting dissemination of public

6   proceedings.  The California Constitution declares that "[t]he proceedings of each house [of the

7   Legislature] and the committees thereof shall be open and public."  Cal. Const., art. IV, § 7(c)(1);

8   *see also* Cal. Const., art. I, § 3(b)(1) ("The people have the right of access to information

9   concerning the conduct of the people's business, and, therefore, the meetings of public bodies and

10  the writings of public officials and agencies shall be open to public scrutiny.").[4]  The Legislature

11  itself has acknowledged that "access to information concerning the conduct of the people's

12  business is a fundamental and necessary right of every person in this state."  Cal. Gov. Code §

13  6250.  To that end, the Legislature has declared on multiple occasions that the People's right to

14  know what its government is doing is essential to our system of democratic self-governance:

15          The people of this state do not yield their sovereignty to the agencies which serve
            them.  The people, in delegating authority, do not give their public servants the
16          right to decide what is good for the people to know and what is not good for them to
            know.  The people insist on remaining informed so that they may retain control
17          over the instruments they have created.

18  Cal. Gov. Code § 54950; *id.*, § 11120.[5]

19        The Assembly carries on the legislative business on behalf of the citizens of California and

20  it creates video footage that captures those proceedings.  California cannot restrict its citizens from

21  sharing that footage with fellow citizens in furtherance of their fundamental speech rights.  Once

22  the government elects to publish video, audio, or text of their proceedings, it cannot then

23  criminalize citizens' use of such content.  The Supreme Court has explained that the government's

24  _____

25  [4]      The inclusion of the public's right of access within Article I, Section 3 is significant, as it
    reinforces the fact that access to information is central to the people's "right to instruct their
26  representatives, petition government for redress of grievances, and assemble freely to consult for
    the common good."  Cal. Const., art. I, § 3(a).

27  [5]      These declarations were included in the Ralph M. Brown Act, passed in 1953 (which
    governs public access to local agencies), and the Bagley-Keene Act, passed in 1967 (which
28  governs public access to proceedings of state agencies).

determination to make information publicly available necessarily means that further dissemination

serves the public interest:

> By placing the information in the public domain on official court records, the State
> must be presumed to have concluded that the public interest was thereby being
> served.  Public records by their very nature are of interest to those concerned with
> the administration of government, and a public benefit is performed by the
> reporting of the true contents of the records by the media.  The freedom of the press
> to publish that information [is] of critical importance to our type of government in
> which the citizenry is the final judge of the proper conduct of public business.

*Cox Broad. Corp. v. Cohn*, 420 U.S. at 495.[6]  Such is the case here: The Legislature has placed the

video feed in the public domain; the public must be free to share and use that information in the

exercise of their speech rights.

### 3.   The State's Purported "Legislative Integrity" Interest Fails Strict Scrutiny.

In opposing Plaintiffs' motion for preliminary injunction, the State argued that Section

9026.5 was justified by "a compelling interest in protecting the integrity of Assembly

proceedings." ECF No. 10 at 1:18.  The Court properly rejected this argument:

> Defendant identifies the need to prevent grandstanding as synonymous with the
> protection of the integrity of legislative proceedings. That argument fails for a very
> basic reason: the fact that an Assembly member plays to the camera during
> legislative proceedings does not mean that those proceedings or their results lack
> integrity. One person's "grandstanding" is another's "passionate debate." In other
> words, "grandstanding" is simply "speech" by another name. The State's interest in
> preventing such speech is far from compelling.

ECF No 15, Injunction Order at 7:15–21 (citation omitted).

The Court further observed that, even if the State had an interest in "preventing

grandstanding," the statute "is far from necessary–or narrowly tailored–to achieve that goal." *Id.*

at 8:13.  The statute is neither necessary (the State Senate, for example, lacks a similar restriction)

nor narrowly tailored (because Assembly members can just as well "grandstand" in front of the

cameras to attract press coverage). *Id.* at 8:3–12.  Furthermore, the Court noted, the Assembly

---

[6]   *See also Florida Star v. B.J.F.*, 491 U.S. 524 (1989) (while government can properly
decline to release information, "once the truthful information was 'publicly revealed' or 'in the
public domain,'" it "could not constitutionally restrain its dissemination"). *Accord Smith v. Daily
Mail Publ'g Co.*, 443 U.S. 97, 103 (1979) (striking down West Virginia statute making it a crime
to publish the name of a juvenile charged with an offense after newspaper was indicted for
publishing name it lawfully obtained by monitoring police radio transmissions); *Landmark
Commc'ns, Inc. v. Virginia*, 435 U.S. 829 (1978) (striking down state statute that criminalized
publication of the contents of confidential judicial proceedings).

"can prevent grandstanding through less intrusive means" that do not infringe the freedom of speech. *Id.* at 8:13–23.

And in rejecting Defendant's arguments, the Court noted the "actual, entirely uncompelling purpose behind section 9026.5: 'ensuring that Assembly members are free to engage in legislation without considering that video footage will be used to support or oppose them in political advertisements.'" *Id.* at 8:20 n. 6 (quoting Defendant's Opposition, ECF No. 10 at 5:18–20). This purpose, of course, cannot withstand constitutional scrutiny. "Suppression of the right of the press to praise or criticize governmental agents and to clamor and contend for or against change" violates the most basic principles of the First Amendment. *Mills v. Alabama*, 384 U.S. 214, 219 (1966). "Criticism of government is at the very center of the constitutionally protected area of free discussion. Criticism of those responsible for government operations must be free, lest criticism of government itself be penalized." *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966). And "[c]riticism of [government actors'] official conduct does not lose its constitutional protection merely because it is effective criticism and hence diminishes their official reputations." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 273 (1964).

## V. CONCLUSION

For the reasons set forth above, the Court should grant Plaintiffs' motion for summary judgment and enter judgment in Plaintiffs' favor.


Dated: August 24, 2016                    BENBROOK LAW GROUP, PC


                                          By  /s Bradley A. Benbrook
                                              BRADLEY A. BENBROOK
                                              Attorneys for Plaintiffs